Glenn HALLBERG, Appellant–
Respondent,

v.

HENDRICKS COUNTY OFFICE OF
FAMILY AND CHILDREN,
Appellee–Petitioner.

No. 32A01–9507–JV–218.

Court of Appeals of Indiana.

Feb. 26, 1996.

Stephan P. Rothberg, Fort Wayne, for Appellant.

Mark O'Hara, Brownsburg, for Appellee.

## OPINION

BAKER, Judge.

Appellant-respondent Glenn Hallberg appeals the trial court's determination that his two daughters, K.H. and S.H., are children in need of services (CHINS). Specifically, Glenn contends that: (1) the Hendricks Circuit Court lacked subject matter jurisdiction

to issue a protective order against him and to find that S.H. and K.H. were CHINS, (2) the Hendricks Circuit Court failed to serve him with a summons or a copy of the CHINS petition as required by IND.CODE § 31–6–7–4, (3) the Hendricks Circuit Court erred in denying his motions for a continuance, and (4) the evidence was insufficient to support the trial court's finding that K.H. and S.H. were CHINS. In response, appellee-petitioner the Hendricks County Office of Family and Children (Department) argues that Glenn's appeal should be dismissed for lack of jurisdiction.

### FACTS

On August 19, 1994, the Allen Superior Court entered a decree of dissolution in which it dissolved Glenn and Bonnie J. Cowley's marriage, awarded custody of their children, K.H. and S.H., to Bonnie and granted Glenn visitation rights. Following the dissolution, Bonnie and the children moved to Hendricks County. Thereafter, on September 30, 1994, the Department received a report that Glenn had sexually molested five-year-old K.H. As a result, on October 4, 1994, Donna G. Reed, a caseworker for the Department, interviewed K.H. and S.H. at which time K.H. disclosed that Glenn had touched and kissed her private areas during a recent visit to Glenn's home in Fort Wayne.

On October 13, 1994, Bonnie filed a petition in the Allen Superior Court seeking to modify Glenn's visitation rights with K.H. and S.H. Specifically, Bonnie alleged that Glenn had improperly touched and kissed K.H. and requested that the trial court either impose supervised visitation or discontinue visitation entirely. The Allen Superior Court scheduled a hearing on Bonnie's petition for December 14, 1994. The next day, Bonnie filed a petition for a protective order in the Hendricks Superior Court again alleging that Glenn had improperly touched and kissed K.H. On October 18, 1994, the Hendricks Superior Court issued an emergency protec-

tive order and scheduled a hearing for the following day. In response, Glenn filed a motion to dismiss alleging that the Hendricks Superior Court action was an improper collateral attack on the visitation order issued by the Allen Superior Court as part of the parties' dissolution decree. On October 19, 1994, the Hendricks Superior Court granted Glenn's motion to dismiss, vacated the emergency protective order and denied Bonnie's motion for a permanent protective order.[1]

On November 22, 1994, the Hendricks Circuit Court conducted an emergency hearing to determine whether a protective order should be issued and whether there was probable cause to believe that K.H. and S.H. were CHINS.[2] At the hearing, several witnesses, including Reed, testified that K.H. and S.H. were CHINS. Specifically, Reed testified that K.H. had disclosed to her during an interview that Glenn had touched and kissed her private areas. Record at 203. Reed further testified that Dr. John Gaebler of the Wishard Memorial Hospital Child Sexual Abuse Clinic performed a medical examination on K.H. on October 11, 1994, and that his findings were consistent with abuse. R. at 206. After the hearing, the trial court found probable cause to believe that K.H. had been sexually molested by Glenn and that K.H. and S.H. were CHINS. The Hendricks Circuit Court then issued an emergency protective order prohibiting Glenn from having any contact with K.H. and S.H. until a final hearing could be held on December 15, 1994. Glenn was served with a copy of the protective order on December 5, 1994.

On the day of the scheduled emergency hearing, December 15, 1994, the Department filed a petition with the Hendricks Circuit Court alleging that K.H. and S.H. were CHINS. The court proceeded to hold the hearing, during which Bonnie admitted the allegations contained in the CHINS petition. Because Glenn was not present, the court then scheduled a fact-finding hearing on the

---

1. We note that the Hendricks Superior Court, which is not a court of juvenile jurisdiction, was correct in granting Glenn's motion to dismiss pursuant to our supreme court's recent holding in *State ex rel. Meade v. Marshall Superior Court II*, 644 N.E.2d 87 (Ind.1994).

2. Because no petition is contained in the record, it is unclear whether Bonnie or the Department initiated the action in the Hendricks Circuit Court, or the exact nature of that action.

petition for March 20, 1994. On January 17, 1995, Glenn filed a motion to dismiss in the Hendricks Circuit Court seeking to have the CHINS action dismissed and transferred to the Allen Superior Court. The Hendricks Circuit Court denied Glenn's motion to dismiss on the same day, and rescheduled the fact-finding hearing on the petition for March 1, 1995. On February 28, 1995, Glenn filed a motion for a continuance. The trial court granted Glenn's motion and rescheduled the fact-finding hearing for March 30, 1995. Glenn filed two additional motions for continuances on March 22, 1995, and March, 29, 1995, both of which were denied by the trial court. Following the hearing, the trial court issued findings of fact and conclusions of law on April 27, 1995, in which it found that K.H. and S.H. were CHINS and ordered the children to remain in Bonnie's custody.

## DISCUSSION AND DECISION

### I. Standard of Review

Here, the trial court entered specific findings of fact and conclusions of law pursuant to IND.CODE § 31–6–4–15.3(i). When reviewing a trial court's findings of fact and conclusions of law, we engage in a two-tier standard of review. We must first determine whether the evidence supports the findings and second, whether the findings support the judgment. *Vanderburgh Co. Bd. of Comm'rs v. Rittenhouse*, 575 N.E.2d 663, 665 (Ind.Ct.App.1991), *trans. denied.* The judgment will be reversed only if it is clearly erroneous, and the judgment is clearly erroneous only when it is unsupported by the findings of fact and conclusions of law entered on those findings. *Id.* at 665.

### II. Department's Motion to Dismiss

The Department contends that the trial court's order finding S.H. and K.H. to be CHINS was not a final, appealable judgment, and thus, Glenn was required to bring the present action as an interlocutory appeal. The Department's argument continues that because Glenn failed to do so, his appeal should be dismissed.

We have held that once a trial court determines that a child is a CHINS, the trial court is required to hold a dispositional hearing because the finding of CHINS is a mere preliminary step to be taken prior to choosing among several different dispositional alternatives. *In the Matter of M.R., W.D. and C.J.*, 452 N.E.2d 1085, 1088 (Ind.Ct.App. 1983). It is only after the disposition that a final, appealable judgment exists because that choice finally determines the rights of the parties. *Id.*

Specifically, the Department argues that because the trial court did not hold a dispositional hearing, the trial court's April 27, 1995, order was not a final, appealable judgment. We disagree. Here, the record reveals that the trial court held a fact-finding hearing on March 30, 1995, after which it determined that S.H. and K.H. were CHINS. The trial court determined that the children "are to remain in the custody of their mother, Bonnie Cowley and to receive those services recommended by the Department." R. at 191. Thus, although the trial court did not hold a separate dispositional hearing, we believe that the trial court's order finally determined the rights of the parties. Accordingly, a final and appealable judgment exists and we will address the merits of Glenn's appeal.[3]

### III. Jurisdiction

#### A. Protective Order

Next, Glenn argues that the Hendricks Circuit Court lacked subject matter jurisdiction to issue the November 22, 1994, protective order against him where it failed to give him notice of the hearing as required by I.C. § 31–6–7–14(c). I.C. § 31–6–7–14 provides:

(a) Upon ... the motion of a child's parent, ... a caseworker, ... or any person providing services to the child or the child's parent, guardian, or custodian, the juvenile court may issue an order:

(1) to control the conduct of any person in relation to the child;

3. Contrary to the Department's assertions, Glenn did not waive his right to challenge the trial court's March 29, 1995, order denying his motion for a continuance. Pursuant to Ind. Appellate Rule 4(B), Glenn was not required to bring an interlocutory appeal at that time.

. . .

(c) The juvenile court must give notice to any person whose conduct will be regulated by an order issued under subsection (a) to appear at a specified date and time concerning the relief requested under subsection (a).

Thus, pursuant to I.C. § 31–6–7–14(c), the Hendricks Circuit Court was required to give Glenn notice of the November 22, 1994, hearing. However, I.C. § 31–6–7–14 further provides:

(f) If the juvenile court determines on the juvenile court's review of the record or if the moving party demonstrates by sworn testimony or affidavit that an emergency exists, the juvenile court may issue an emergency order without a hearing.

Here, the record reveals that the Hendricks Circuit Court conducted an emergency hearing on November 22, 1994.[4] R. at 199. Once the Hendricks Circuit Court determined that an emergency existed, it had the authority, pursuant to I.C. § 31–6–7–14(f), to issue an emergency protective order without a hearing and without notifying Glenn of the proceedings. We find no error.

### B. CHINS Proceeding

█ Glenn contends that the Hendricks Circuit Court action constituted an improper collateral attack on the visitation order imposed by the Allen Superior Court, and that that court is the only court that can have jurisdiction over the CHINS proceedings. We disagree. I.C. § 31–6–2–1.1 gives a juvenile court exclusive original jurisdiction over CHINS cases once certain preliminary procedural steps are taken by the juvenile court. *Matter of Lemond,* 274 Ind. 505, 413 N.E.2d 228, 246 (1980). An examination of the CHINS statutes shows the following statutory prerequisites to jurisdiction. First, the court must determine that the child is a CHINS pursuant to IND.CODE § 31–6–4–3(a)(1)–(8), which provides in part:

(a) A child is a child in need of services if before the child's eighteenth birthday:

. . .

(2) the child's physical or mental health is seriously endangered due to injury by the act or omission of the child's parent, guardian, or custodian;

(3) the child is the victim of a sex offense. . . .

Here, the Department received a report that Glenn had sexually molested K.H. while K.H. was visiting Glenn at his home. When Reed interviewed K.H., K.H. disclosed that Glenn had touched and kissed her private areas. Therefore, the Department had evidence that K.H. and S.H.'s physical and mental health was seriously endangered due to an injury by a parent and that K.H. was the victim of a sex offense.

IND.CODE § 31–6–4–8 establishes the next steps to be followed in acquiring or establishing jurisdiction in a CHINS proceeding. Specifically, that section provides the procedures the Department is to follow after it receives information that a child is in need of services, including preparing a preliminary inquiry and determining whether a CHINS petition should be filed. If the Department determines that a CHINS petition should be filed, it must obtain authorization to file the petition from the juvenile court. This procedure is set forth in IND.CODE § 31–6–4–10 as follows:

(a) The prosecutor or the attorney for the county office [of] family and children may request the juvenile court to authorize the filing of a petition alleging that a child is a child in need of services. . . .

(b) The juvenile court shall consider the preliminary inquiry and the evidence of probable cause as contained in either the report of the preliminary inquiry or an affidavit of probable cause. The court shall authorize the filing of a petition if it finds probable cause to believe that the child is a child in need of services.

Glenn argues that the Hendricks Circuit Court did not comply with I.C. § 31–6–4–10, and thus, it failed to acquire subject matter jurisdiction over the CHINS proceeding. Specifically, Glenn argues: (1) the Depart-

---

**4.** The record does not contain a transcript of the evidence that the court relied upon in reaching its determination that an emergency existed. Thus, we are unable to review the trial court's determination that the hearing was an emergency.

ment did not file a copy of its report of preliminary inquiry or an affidavit of probable cause at the November 22, 1994, hearing and (2) the Hendricks Circuit Court never entered an order authorizing the filing of a CHINS petition, both of which, he alleges, are required by I.C. § 31–6–4–10(b).

■ First, although the Department did not file a report of preliminary inquiry at the November 22, 1994, hearing, it did present the sworn testimony of several witnesses, including Reed, in support of its allegations that K.H. and S.H. were CHINS. Specifically, Reed testified that K.H. had disclosed to her during an interview that Glenn had touched and kissed K.H.'s private areas. Thus, we believe that the Department presented sufficient evidence of probable cause at the November 22, 1994, hearing to satisfy the jurisdictional requirements of I.C. § 31–6–4–10(b).

■ Next, we address Glenn's argument that the Hendricks Circuit Court never entered an order authorizing the filing of the CHINS petition. Following the November 22, 1994, hearing, the trial court entered an order in which it found probable cause to believe that K.H. had been sexually abused by Glenn and that K.H. and S.H. were CHINS. We believe that this order was sufficient authorization for the Department to file its CHINS petition. Based upon this evidence, we believe that the Hendricks Circuit Court complied with the jurisdictional requirements of I.C. § 31–6–4–10. Thus, because the Hendricks Circuit Court complied with the jurisdictional prerequisites for obtaining jurisdiction over the CHINS proceeding, it has exclusive original jurisdiction over the CHINS proceeding regardless of where the visitation order was entered.

### IV. Notice

■ Glenn also argues that the Hendricks Circuit Court denied him his right to due process and his opportunity to be heard where it failed to serve him with a summons or a copy of the CHINS petition as required by I.C. § 31–6–7–4, and as a result, he was prejudiced in the CHINS proceedings.[5] I.C. § 31–6–7–4 provides:

(a) After a petition has been filed, the juvenile court shall set a time for the initial hearing.... A summons shall be issued for the child, for his parent, guardian, custodian, or guardian ad litem, and for any other person necessary for the proceedings.

(b) A copy of the petition must accompany each summons. The clerk shall issue the summons under Rule 4 of the Indiana Rules of Trial Procedure.

Here, the record reveals that on December 5, 1994, Glenn was served with a copy of the November 22, 1994, protective order which prohibited him from having any contact with his children. R. at 2, 21–22. Although Glenn did not receive a summons or a copy of the CHINS petition, Glenn concedes that on December 2, 1995, he received a copy of the trial court's November 22, 1994, order in which it stated that it found probable cause to believe that Glenn had molested K.H. and that S.H. and K.H. were CHINS. R. at 126, Appellant's Reply Brief at 4. The order further provided that Glenn was prohibited from having any contact with K.H. and S.H. and that an emergency hearing would be held on the matter on December 15, 1994, at 1:30 p.m. R. at 126. Thus, because Glenn was notified on December 2, 1994, of the substance of the allegations against him and the emergency hearing set for December 15, 1994, we cannot say that the trial court's failure to serve Glenn with a summons or a copy of the CHINS petition denied him his right to due process or the opportunity to be heard.[6] Moreover, even if we were to assume that Glenn was prejudiced by the trial

---

5. Glenn also argues that the court failed to determine whether he admitted or denied the allegations contained in the CHINS petition. However, the record reveals that following the December 15, 1994, hearing in which Bonnie admitted the allegations contained in the CHINS petition, the trial court held a fact-finding hearing to give Glenn the opportunity to

address those allegations. From this evidence, we presume that Glenn denied the allegations contained in the CHINS petition. *See* IND. CODE § 31–6–4–13.6(f).

6. The record reveals that Glenn's counsel entered a written appearance on December 16, 1994.

court's omission, the record reveals that the trial court scheduled a fact-finding hearing on the CHINS petition for March 30, 1994, to give Glenn the opportunity to address the allegations contained in the CHINS petition.[7] Glenn, however, failed to appear at that hearing. Based upon this evidence, we cannot say that Glenn was prejudiced by the trial court's failure to serve him with a summons and a copy of the CHINS petition.

## V. Continuance

Next, Glenn contends that the trial court erred in denying his motions for continuances of the trial court's March 30, 1995, fact-finding hearing. Specifically, Glenn appears to be arguing that the trial court's failure to grant his motions for continuances denied him the opportunity to adequately prepare for the fact-finding hearing, including the opportunity to complete discovery. We disagree.

The granting or denial of a continuance is clearly within the discretion of the trial court. *Fetner v. Maury Boyd & Assoc., Inc.*, 563 N.E.2d 1334, 1338 (Ind.Ct.App. 1990), *trans. denied.* Denial of the motion is an abuse of discretion only if the movant demonstrates good cause for granting the motion. *Id.*

Here, the record reveals that following the December 15, 1994, emergency hearing, the Hendricks Circuit Court scheduled a fact-finding hearing on the CHINS petition for March 20, 1994. On February 28, 1995, Glenn filed a motion for a continuance. The trial court granted Glenn's motion and rescheduled the fact-finding hearing for March 30, 1995.[8] Glenn filed two additional motions for continuances on March 22, 1995, and March 29, 1995, both of which were denied by the trial court. Although Glenn maintains that he had inadequate time to prepare for the hearing, the record reveals that he had at least one month after he filed his first motion for a continuance to prepare for the fact-finding hearing. Thus, we cannot say that the trial court abused its discretion in denying Glenn's motions for continuances.

Glenn also maintains that the trial court should have continued the fact-finding hearing until he was served with a copy of the CHINS petition. Glenn, however, fails to assert how he was prejudiced by the trial court's failure to do so. As we stated above, Glenn received notice of the substance of the allegations against him on December 2, 1994, when he received a copy of the trial court's November 22, 1994, order. Based upon this evidence, we cannot say that the trial court abused·its discretion when it denied Glenn's motions for continuances.

## VI. Sufficiency of the Evidence

Lastly, Glenn argues there was insufficient evidence to support the trial court's finding that K.H. and S.H. were CHINS. When reviewing the sufficiency of evidence, we consider only the evidence most favorable to the judgment and the reasonable inferences flowing therefrom. *Vanderburgh County*, 575 N.E.2d at 666. We will not reweigh the evidence or judge the credibility of witnesses. *Id.*

In the instant case, the trial court found, pursuant to IND.CODE § 31–6–4–3(a), that S.H. and K.H. were CHINS. Under this statute, which we previously set forth in Section III(B),

(a) A child is a child in need of services if before the child's eighteenth birthday:

· · ·

(2) the child's physical or mental health is seriously endangered due to injury by the act or omission of the child's parent, guardian, or custodian;

---

7. Glenn also argues that he was denied the opportunity to cross-examine witnesses at the December 15, 1994, hearing as required by IND. CODE § 31–6–3–2(a) and that the trial court failed to advise him of the warnings contained in I.C. § 31–6–4–13.6. However, Glenn was notified of the December 15, 1994, hearing on December 2, 1994, yet failed to appear. Therefore, we believe that Glenn waived these arguments.

8. Glenn argues that the trial court erred in rescheduling the fact-finding hearing for March 30, 1995, where the parties had agreed to continue the hearing for no less than forty-five days. Glenn, however, fails to assert how he was prejudiced by the trial court's failure to do so. Thus, we will not address his argument further.

(3) the child is the victim of a sex offense....

The State has the burden at trial of proving by a preponderance of the evidence that K.H. and S.H. are CHINS. *In the Matter of E.M.*, 581 N.E.2d 948, 952 (Ind.Ct.App.1991), *trans. denied.*

■■■■ Here, the Department presented evidence at the March 30, 1995, fact-finding hearing that K.H. had been sexually molested by Glenn. Dr. Gaebler testified that he examined K.H. on October 11, 1994, and that nothing led him to believe that the allegations of sexual abuse were untrue. R. at 231. Further, K.H. testified that Glenn had touched her "privates."[9] R. at 234. Additionally, Reed testified that K.H. had disclosed during an interview that Glenn had touched and kissed her private parts.[10] R. at 238. Pursuant to this evidence, the trial court found that "due to the uncontested allegations of molestation of [K.H.] by [her] natural father, the legal custodial parent, Bonnie Cowley, is unable to provide adequate supervision and protection of the children during any period of visitation by the natural father Glen (sic) Hallberg." R. at 191. We believe that the trial court's finding is sufficient to support its conclusion that S.H. and K.H. are CHINS.

Judgment affirmed.

ROBERTSON and NAJAM, JJ., concur.

---

**9.** Glenn contends that the trial court erred in admitting Reed's testimony regarding her conversation with K.H. Specifically, Glenn argues that he was entitled, pursuant to IND.CODE §§ 31–6–15–2 and 31–6–15–5, to receive notice of the Department's intent to introduce K.H.'s statement. We note, however, that the statutes cited by Glenn are applicable to those instances where a victim's statement is going to be used and the victim is not going to testify. Here, because K.H. was present to testify, the Department was not required to inform Glenn of its intent to introduce the statement. Furthermore, even assuming that Reed's testimony was inadmissible, her statements were merely cumulative of K.H.'s testimony. Thus, Glenn suffered no prejudice.

**10.** Glenn argues that the Department failed to show that K.H. and S.H. were in need of treatment or rehabilitation. However, we believe that the trial court's finding that K.H. had been sexually abused by Glenn supports a finding that the children are in need of care and treatment.