**In re The Matter of T.Y.T., a Child Determined to be a Child in Need of Services, Appellant–Tonya Harrison,**

v.

**ALLEN COUNTY DIVISION OF FAMILY AND CHILDREN, Appellee.**

No. 02A03–9903–JV–127.

Court of Appeals of Indiana.

Aug. 5, 1999.

Daniel G. Pappas, Fort Wayne, Indiana, Attorney for Appellant.

Dustin M. Roach, Avery˙Boyer & Van Gilder, Fort Wayne, Indiana, Attorney for Appellee.

## OPINION

FRIEDLANDER, Judge

Tonya Harrison appeals a determination that her child, T.Y.T., was a Child in Need of Services (CHINS). Harrison presents the following restated issues for review:

1. Did the Allen Superior Court have jurisdiction to conduct a CHINS proceeding concerning T.Y.T.?

2. Was there sufficient evidence to support the trial court's finding that placing T.Y.T. in her mother's home was not in the child's best interest, and did the trial court err in finding that reasonable efforts have been made by the Allen County Office of Family and Children to reunite T.Y.T. with her mother, and by determining that T.Y.T. should remain in foster care?

3. Did the trial court err in finding that T.Y.T. was a CHINS?

We affirm.

The facts are that T.Y.T. was born to Harrison on December 28, 1996, when Harrison was seventeen years old. At the time, Harrison resided in a group home in California. Soon after the birth, while still residing in the group home, Harrison was arrested for underage drinking. T.Y.T. was thereafter removed from Harrison's care by the California Division of Family and Children and placed with Terrell Turner, whom Harrison had identified as the child's father.[1] When Harrison turned eighteen years old, she left the group home, but did not go to live with Turner or attempt to regain custody of T.Y.T. After she left the group home, Harrison lived in eight different locations and was not employed.

Turner was a professional musician. In late October of 1997, he traveled to Fort Wayne, Indiana for a professional photo shoot in connection with his musical career, and he wanted T.Y.T. to appear in the photos. While there, he took T.Y.T. several times to the home of Lois Knight, a childcare provider. On one occasion, Turner left T.Y.T. in Knight's care and did not return. After several days, Knight notified the Allen County Division of Family and Children (ACDFC). Janie Nycum, a case worker for the ACDFC, investigated and learned that Harrison was T.Y.T.'s mother, and she was then staying in Illinois. Nycum contacted Harrison's biological mother[2] on December 2 and asked her to inform Harrison that T.Y.T. was the subject of a court hearing that was to be conducted in Fort Wayne. Harrison contacted Nycum on December 3 and informed Nycum that she was living in Illinois with her boyfriend. Harrison informed Nycum that she was pregnant and did not have a job or a car. She also told Nycum that her boyfriend had a previous felony conviction and had been involved with illegal drugs. Nycum advised Harrison that a CHINS hearing would be conducted on December 4. Harrison did not appear for the hearing, so that matter was continued until December 8 or 9. Harrison again failed to appear at the December 8 or 9 hearing.

Following the hearing, the court determined that T.Y.T. would be placed outside Harrison's home pending further proceedings. Thereafter, the ACDFC filed a verified petition alleging that T.Y.T. was a CHINS. A fact-finding hearing was conducted on the CHINS petition on October 16, 1998. Following the hearing, the court determined that T.Y.T. was a CHINS. The court further found: "[C]ontinuation of the child at home would be contrary to child's welfare, reasonable efforts have been made by the Division of Family and Children to prevent the need for placement and to reunite the child with custodian. Child is to remain in foster care." Record at 57.

### 1.

Harrison contends that, pursuant to the Uniform Child Custody Jurisdictional Act (UCCJA), the trial court did not have jurisdiction to conduct a CHINS proceeding. This question concerns the relationship between the CHINS and UCCJA statutes.

---

1. Harrison subsequently claimed that Turner was not T.Y.T.'s father, but instead that the child had been conceived when Harrison was raped by another, unidentified man.

2. Harrison and her twin sister were adopted after their biological mother's parental rights were terminated when Harrison was a young child.

■ In *Matter of E.H.,* 612 N.E.2d 174 (Ind.Ct.App.1993), *opinion adopted,* 624 N.E.2d 471 (Ind.1993), this court rendered a thorough analysis of the way in which a CHINS proceeding is impacted by the UC-CJA. One question that the court squarely addressed is that which Harrison presents here, namely: "whether a CHINS court may exercise jurisdiction without regard to the UCCJA when its jurisdiction is invoked under the CHINS statute." *Id.* at 180. A juvenile court has original jurisdiction over CHINS proceedings, pursuant to Ind.Code Ann. § 31–30–1–1 (West 1998). The jurisdiction conferred on courts in such cases enables the State to respond to emergency situations involving children who are not likely to be helped without court intervention. *Matter of E.H.,* 612 N.E.2d at 174. In such cases, jurisdiction under the CHINS statutes is temporary, lasting only for the duration of the emergency. When the emergency passes, the temporary jurisdiction conferred by the CHINS statutes ends. *Id.* If the CHINS court intends to exercise jurisdiction over the child on an ongoing basis after the emergency passes, it must follow the customary procedures set forth in the UCCJA.

■ Abandonment of a child is one of the emergencies that provides a basis for exercising jurisdiction under the CHINS statute. IC § 31–34–1–2; *Matter of E.M.,* 581 N.E.2d 948 (Ind.Ct.App.1991), *trans. denied.* In the instant case, T.Y.T. was left at Knight's house under circumstances that constituted abandonment. As set out above, the Allen Superior Court had jurisdiction under the CHINS statutory scheme to address the emergency. A necessary part of helping T.Y.T. was the institution of a proceeding to determine whether she was a CHINS. Therefore, the Allen Superior Court had jurisdiction to preside over the CHINS proceeding.

We pause here to address a related argument made by Harrison. The focus of Harrison's challenge on this issue is that the Allen Superior Court did not have jurisdiction to preside over a CHINS proceeding involving T.Y.T. Similarly, but somewhat off the point, Harrison also argues that the Allen Superior Court did not have jurisdiction to make a custody determination. To the extent this argument challenges the court's jurisdiction to determine how T.Y.T. should be cared for pending further proceedings, the argument is without merit. As stated previously, the court has jurisdiction to address an emergency, which certainly includes deciding where the child should stay until the matter is resolved.

■ To the extent Harrison's argument challenges the future exercise of the court's jurisdiction, we make the following brief observations. Based upon the record before us, Harrison's invocation of the UCCJA provision in support of her argument that California has jurisdiction over this matter is premature. While Harrison alludes to custody proceedings in California, and the record indicates that the California Department of Family and Children has been involved to some extent, we find no evidence that a California court has ongoing jurisdiction in this matter. An October 6, 1998 fact-finding report submitted by the ACDFC indicated that a custody action had been initiated on June 1, 1998, in Alameda County, California by Samantha Hart, T.Y.T.'s maternal grandmother. Hart sought custody of T.Y.T. However, by September 30, 1998, Hart had "dropped" the case as a result of moving to Texas. *Record* at 55. With regard to the initial determination that Turner should have custody of T.Y.T., Harrison answered in the negative when asked whether it "was all done legally through the State of California?" *Record* at 96. Rather, Harrison testified, the arrangement was "just an agreement" between Harrison, Turner, and the California DFC. *Id.* Somewhat confusingly, Harrison also indicated that the arrangement was approved by the court. In any event, the record before us does not contain any documentation of an ongoing California custody proceeding, if one exists. Accordingly, as matters now stand, the record does not support Harrison's assertion that California has priority jurisdiction over Indiana as T.Y.T.'s "home state", *see* IC § 31–17–3–3(a)(3) and (4); IC § 31–17–3–3(b), because there is no record that a California court has exercised such jurisdiction.

### 2.

■ Harrison contends that the trial court erred in (1) finding that placement of T.Y.T.

with her mother was contrary to T.Y.T.'s best interests, (2) finding that reasonable efforts were made by the ACDFC to prevent the need for placement of T.Y.T., and (3) ordering that T.Y.T. remain in foster care.

A petition alleging that a child is a CHINS need not allege that allowing the child to remain in the parent or guardian's home is contrary to the child's best interests, or that reasonable efforts have been made to prevent the need for placement outside of the parent or guardian's home. *See* Ind.Code Ann. § 31–34–9–3. Therefore, a finding that a child is a CHINS need not be supported on those bases. At a fact-finding hearing, the court decides only whether the child is a CHINS based upon the criteria set out in the CHINS statute. A CHINS finding need only be supported by sufficient evidence that a child is a CHINS as defined in the CHINS statute. Such was done in the instant case. *See infra* Issue 3. It is at the dispositional hearing that the State must support the allegation that reasonable efforts were made to reunite the child with the parent or guardian. *See* Ind.Code Ann. § 31–35–2–4(b)(2)(A)(ii). While the CHINS statute permits such a finding at the fact-finding stage of a CHINS proceeding, *see* Ind.Code Ann. § 31–34–21–5.6(a), the statute does not require it. Even assuming for the sake of argument that there was no evidentiary basis for the findings of which Harrison complains, those findings are not essential elements of a determination that a child is a CHINS. Therefore, their inclusion in this case cannot constitute reversible error.

### 3.

Harrison contends that there was insufficient evidence to support the trial court's determination that T.Y.T. was a CHINS.[3]

The State bore the burden of proving by a preponderance of the evidence that T.Y.T. was a CHINS. We review the sufficiency of the evidence by considering only the evidence favorable to the judgment, together with the reasonable inferences to be drawn therefrom. *Hallberg v. Hendricks County Office of Family and Children*, 662 N.E.2d 639 (Ind.Ct.App.1996). In so doing, we neither reweigh the evidence nor judge witness credibility. *Id.*

Under the CHINS statute, a child is a CHINS if, before the child's eighteenth birthday, "the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision." IC § 31–34–1–1. The ACDFC presented evidence at the fact-finding hearing that T.Y.T. had been abandoned by her guardian and putative father, Turner. There was also evidence that T.Y.T.'s mother, Harrison, did not even know where T.Y.T. was at the time, and that Harrison was not then attempting to ascertain T.Y.T.'s whereabouts. Again, for all intents and purposes, T.Y.T. had been abandoned. This was sufficient to support the court's determination that T.Y.T. was a CHINS.

Judgment affirmed.

RILEY, J., and ROBB, J., concur.

---

**3.** We are mindful that authority exists for the proposition that Harrison's challenge to the sufficiency of the evidence should be dismissed for lack of a final appealable order. In *In the Matter of J.L.V., Jr.*, 667 N.E.2d 186 (Ind.Ct.App.1996), this court held that a CHINS determination that follows a fact-finding hearing does not constitute the end of the subject matter of litigation. Rather, a final appealable judgment is not rendered in such proceedings until the entry of a dispositional order, following a dispositional hearing. *Id.* The determination that Harrison herein appeals was made following a fact-finding hearing. However, the court did conduct a dispositional hearing eight days after the fact-finding hearing and rendered a judgment entitled "Order On Disposition Hearing." *Record* at 62. While the record does not contain a transcript of the dispositional hearing, we are inclined to address this issue on the merits because a dispositional hearing has been conducted. *See Hallberg v. Hendricks County Office of Family and Children*, 662 N.E.2d 639 (Ind.Ct.App.1996).