**In the Matter of T.N., A Child in Need of Services, G.N., Father, Appellant–Respondent,**

v.

**INDIANA DEPARTMENT OF CHILD SERVICES, Appellee–Petitioner, and Child Advocates, Inc., Co–Appellee–Guardian ad Litem.**

No. 49A05–1101–JC–15.

Court of Appeals of Indiana.

Sept. 28, 2011.

James A. Edgar, J. Edgar Law Offices, Prof. Corp., Indianapolis, IN, Attorney for Appellant.

Patrick M. Rhodes, DCS, Marion County Office, Indianapolis, IN, Robert J. Henke, DCS Central Administration, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

G.N. (Father) challenges the determination his daughter, T.N., is a child in need of services (CHINS). He argues the trial court violated his right to due process when it found his daughter a CHINS based on the admission of her mother, M.B., without allowing Father to contest that allegation at a hearing. We agree the trial court violated Father's right to due process, reverse the adjudication, and remand for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

On August 16, 2010, the Indiana Department of Child Services ("DCS") filed a CHINS petition alleging Mother and Father did not provide T.N. with a safe living environment and appropriate supervision because: (1) Mother allowed T.N.'s boyfriend to sleep over when T.N. was thirteen years old, which resulted in T.N. becoming pregnant and giving birth to a child when she was fourteen years old; and (2) Father has untreated substance abuse and mental health issues, including a diagnosis of paranoid schizophrenia. Following the initial hearing, the court permitted T.N. to remain in Father's home. Less than a month later, the court removed T.N. from Father's home and placed her in foster care because Father was not cooperating with DCS, T.N. was not enrolled in school, and T.N. had to be hospitalized for head and facial injuries after being attacked by nieces of Mother's boyfriend.

On November 8, 2010, the trial court was to hear evidence at a "Children In Need of Services Fact Finding Hearing." (App. at 71.) After noting on the record the presence of all parties and their counsel, the court indicated it understood Mother had reached an agreement with DCS. Mother's counsel agreed, and the following discussion occurred:

THE COURT: What ... was it that [M]other was going to be acknowledging that would render her child to be a child in need of services?

[Father's counsel]: Judge, I object to, to CHINS status being granted on any admission that [M]other would make. The parties share joint, physical and legal custody when the CHINS matter originated. My client, therefore, needs to be able to participate in the trial.

THE COURT: And ... he will be afforded that opportunity but first, I need to figure out if, if, if [M]other's admission and acknowledgement of certain things will, will provide the child with a certain status, that being a child in need of services. If so, then [F]ather can, can dispute any services that DCS would want to offer him and so the, his, his trial could essentially come in the form of a contested dispositional hearing. So I understand your objection.

[Father's counsel]: My assertion is that since they share joint legal and physical custody that just one of the parents ... [d]oes not have standing to make any admission.

THE COURT: Any, the appellate case would, would indicate otherwise. Now then, what was that language?

\*    \*    \*    \*    \*    \*

THE COURT: Let me see, [M]other admits the relationship between [M]other and [T.N.] is one that has deteriorated, to the point that [M]other can no longer provide proper supervision for [T.N.] and that communications ... between the two have been broken to the extent that services are necessary to effectuate reunification because [T.N.] is in need of services.

[Mother's counsel]: That's correct, Judge.

THE COURT: DCS, your response?

DCS: Judge, the Department would accept that as an acknowledgement on [M]other's part that [T.N.] is a child in need of services but would agree with [Father's counsel] that if her client desires to have a fact finding, we would proceed to trial at this time.

THE COURT: And I understand that. I will adjudicate this child to be in need of services, based upon [M]other's admission. So now we will be set then for a, what will be a contested disposition, unless [Mother's counsel], your client is in agreement with the services DCS ... [w]ill be recommending she do. That a, a pre-dispositional report has been prepared and a parental participation petition has also been prepared. So I guess what I'm saying is, is this something that we can take care of, of disposition today as to both parents?

DCS: No, Judge.

THE COURT: But you want me to take testimony from people as to what services they want to put in place for [M]other and [F]ather?

DCS: Yes, Judge. The Department believes that the adjudication for the child to be a child in need of services can't occur until after [F]ather's been heard.

THE COURT: Okay. Well again, that's ... not what case law indicates[.]

(Tr. at 3–5.) The court's order noted:

Mother admits that the relationship between [M]other and [T.N.] is one that has deterieted [sic] to the point that [M]other can no longer provide proper supervision for the child and the communications between the two have been broken to the extent that services are necessary to effeciate [sic] reunification because [T.N.] is in need of services. DCS is willing to accept that admission of CHINS. Father objects and wishes a fact-finding. The ... status of this child has been adjudicated.... The Court finds CHINS.

(App. at 72.)

The juvenile court then conducted a contested dispositional hearing to determine what services would be appropriate and necessary. It ordered both Mother and Father to take part in a number of services with a goal of reunification with T.N.

## DECISION AND DISCUSSION

■ Due process is essentially "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). When determining whether a litigant received proper process, we balance three factors: "(1) the private interests affected by the proceeding; (2) the risk of error created by the State's chosen procedure; and (3) the countervailing governmental interest supporting use of the challenged procedure." *In re J.S.O.,* 938 N.E.2d 271, 274 (Ind.Ct.App. 2010). As we review and balance these three interests, we recognize that, "although due process is not dependent on the underlying facts of the particular case, it is nevertheless 'flexible and calls for such procedural protections as the particular situation demands.'" *Lawson v. Marion Cnty. Office of Family & Children,* 835 N.E.2d 577, 580 (Ind.Ct.App.2005) (quoting *In re B.T.,* 791 N.E.2d 792, 795 (Ind.Ct. App.2003), *trans. denied* ). Father's argument requires us to construe the statutes governing CHINS proceedings, and we therefore note statutory interpretation is a question of law that we review *de novo. In re J.Q.,* 836 N.E.2d 961, 964–65 (Ind.Ct. App.2005), *reh'g denied.*

To commence a CHINS proceeding, the State must file a petition. Ind.Code § 31–34–9–3. The parties to such a proceeding include the child; the child's parents, guardian, or custodian; DCS; and the guardian ad litem or court appointed special advocate. Ind.Code § 31–34–9–7. A parent may admit or contest the allegations in the CHINS petition. Ind.Code § 31–34–10–8. If the allegations of the CHINS petition are not admitted, the juvenile court must hold a fact-finding hearing not more than sixty days after the CHINS petition is filed. Ind.Code § 31–34–11–1. At that hearing, parents are guaranteed an opportunity "(1) to cross-examine witnesses; (2) to obtain witnesses or tangible evidence by compulsory process; and (3) to introduce evidence on behalf of the parent, guardian, or custodian." Ind.Code § 31–32–2–3(b). Once the court determines, via admission or contested hearing, that a child is a CHINS, it holds a dispositional hearing to consider:

(1) Alternatives for the care, treatment, rehabilitation, or placement of the child.

(2) The necessity, nature, and extent of the participation by a parent, a guardian, or a custodian in the program of care, treatment, or rehabilitation for the child.

(3) The financial responsibility of the parent or guardian of the estate for services provided for the parent or guardian or the child.

Ind.Code § 31–34–19–1.

Father asks us to review what he sees as a conflict among these statutes. First, Ind.Code § 31–34–10–8 provides:

If the parent, guardian, or custodian admits the allegations under section 6 of this chapter, the juvenile court shall do the following:

(1) Enter judgment accordingly.

(2) Schedule a dispositional hearing.

The juvenile court apparently interpreted the phrase "[i]f the parent … admits" to mean an admission by *either* parent would permit the court to adjudicate the child a CHINS and proceed to a dispositional hearing.

Father argues the court's interpretation conflicts with Ind.Code §§ 31–32–2–3 and 31–34–9–7, which guarantee in proceedings to determine whether a child is in need of services that parents, guardians, and custodians have the rights to present evidence, cross-examine witnesses, and obtain evidence by compulsory process. Father asserts denial of those rights amounts to a

denial of due process and, thus, we should hold due process requires Father be permitted to present evidence before the CHINS determination.

DCS asserts each parent does not have a right to contest a child's CHINS status because a CHINS adjudication is centered on determining whether the court needs to intervene to protect the child's well-being rather than on punishing the child's parents. To support its claim DCS relies on *In re N.E.*, 919 N.E.2d 102, 106 (Ind.2010), which held "a CHINS determination establishes the status of a child alone. Because a CHINS determination regards the status of the child, a separate analysis as to each parent is not required in the CHINS determination stage." Consequently, DCS claims, "a CHINS condition once shown to exist by a preponderance of the evidence (in this case Mother's admission upon the related facts), exists as to all persons in the child's life." (Br. of Appellee at 15–16.)

■ We agree DCS does not have to prove a child is a CHINS as a result of both Mother's actions *and* Father's actions. *See N.E.*, 919 N.E.2d at 106 (domestic violence in mother's home served as basis of the CHINS petition, and no allegations with respect to father were necessary). Nor must the court assign "blame" to each parent in its determination. *See id.* ("to adjudicate culpability on the part of each individual parent ... would be at variance with the purpose of the CHINS inquiry").

■ Nevertheless, *N.E.* did not eliminate the requirement that DCS prove the child is, in fact, in need of services as alleged in the petition. For example, in *N.E.*, the petition alleged N.E. and her three siblings were CHINS due to domestic violence in the mother's home. *Id.* at 104. The mother admitted that allegation, but the father contested the CHINS allegation. At trial, the parties gave divergent testimony regarding the number of hours N.E. spent at each of their homes. The trial court found N.E. to be in need of services, and that finding was supported by the mother's testimony. *See id.* at 106. However, if the trial court had believed the evidence father presented about N.E. spending 95% of her time with him or his mother, the court could presumably have found N.E. was not "seriously endangered" by the situation in the rarely-visited home of mother. *See* Ind.Code § 31–34–1–1(1).[1] Alternatively, the court could have found based on her father's evidence that N.E. would get all the "care, treatment, or rehabilitation" that she needed while in her father's care, without court intervention. *See* Ind.Code § 31–34–1–1(2). Thus, we decline DCS's invitation to hold one parent's admission is sufficient to prove a child is a CHINS, when the child's other parent contests that allegation.

■ DCS next asserts Father received due process because he was able to present evidence during a contested dispositional hearing. We cannot agree, as a contested dispositional hearing is not the same as a CHINS fact-finding hearing.

---

1. A child under the age of eighteen is a CHINS if:

(1) the child's physical or mental condition is seriously impaired or seriously .endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and

(2) the child needs care, treatment, or rehabilitation that:

(A) the child is not receiving; and

(B) is unlikely to be provided or accepted without the coercive intervention of the court.

Ind.Code § 31–34–1–1.

At the fact-finding stage, the primary issue for consideration is whether the child is in need of services. *See In re T.Y.T.*, 714 N.E.2d 752, 756 (Ind.Ct.App.1999) ("At a fact-finding hearing, the court decides only whether the child is a CHINS based upon the criteria set out in the CHINS statute."). At a dispositional hearing, on the other hand, the primary issue is what placement, services, and programs are necessary to properly care for the CHINS. *See* Ind.Code § 31–34–19–1. As the necessity of court-ordered intervention has already been determined by the dispositional hearing, any argument a party might make that his child does not need court-ordered intervention is moot at that point. We therefore cannot agree that a contested dispositional hearing is an adequate substitute for a fact-finding hearing, just as we could not agree that a sentencing hearing would be an adequate substitute for a criminal trial.

■ Litigants have more protection from the admission of unreliable and possibly prejudicial evidence in fact-finding hearings than in dispositional hearings. *See Roark v. Roark*, 551 N.E.2d 865, 868–69 (Ind.Ct.App.1990) (hearsay inadmissible at fact-finding hearing); *In re C.B.*, 865 N.E.2d 1068, 1072 (Ind.Ct.App.2007) (holding predispositional report containing hearsay admissible at disposition hearing), *trans. denied; C.C. v. State*, 826 N.E.2d 106, 111 (Ind.Ct.App.2005) (hearsay admissible in delinquency dispositional proceeding), *trans. denied.* Counsel for DCS so acknowledged during the dispositional proceeding: "We're not in a trial. So all these trial rules, bars against cumulative evidence, don't seem to be applicable." (Tr. at 40.) In light of these relaxed rules for the admission of evidence, we cannot accept DCS's assertion that these two types of proceedings are interchangeable.

■ Having rejected DCS's arguments, we turn to balancing the three factors necessary for determining whether a litigant received due process. *See In re J.S.O.*, 938 N.E.2d at 274 ("(1) the private interests affected by the proceeding; (2) the risk of error created by the State's chosen procedure; and (3) the countervailing governmental interest supporting use of the challenged procedure."). Father's interest in being able to raise his child without interference from the government is substantial. *See R.Y. v. Ind. Dep't of Child Servs.*, 904 N.E.2d 1257, 1259 (Ind. 2009) ("A parent's interest in the care, custody, and control of his or her children is 'perhaps the oldest of the fundamental liberty interests.'") (internal citations omitted). The only apparent State interest served by denying Father a fact-finding hearing is speedy adjudication, but both DCS and Father were prepared to proceed with the fact-finding hearing. The State's interest in denying Father a hearing therefore does not seem substantial.

■ Finally, we acknowledge permitting courts to proceed with a CHINS disposition over the objection of one parent, based on the admission of the other parent, may not create a *substantial* risk of erroneous CHINS adjudications. But as the facts in *N.E.* suggest, trial courts could reach different results after a disputed hearing. This indicates the procedure followed in the case before us could permit error, especially in situations in which one parent may have an ax to grind with the other parent. When the parent's interest is substantial and the State's interest appears minimal, this risk of error should be avoided. *See, e.g., In re N.E.*, 919 N.E.2d at 108 (denial of procedural due process in CHINS proceeding can adversely impact a parent's procedural due process rights in a subsequent termination of parental rights

proceeding). Thus, we hold that if either parent challenges a CHINS allegation, due process requires a fact-finding hearing before the court declares the child a CHINS.

Finally, DCS argues we should not reverse for a due process violation because Father effectively withdrew his objection to the CHINS finding when he agreed to participate in certain services pursuant to the dispositional order. We decline the State's invitation to hold a litigant sacrifices his due process rights by cooperating with a subsequent court order.

Reversed and remanded.

RILEY, J., and NAJAM, J., concur.