Pursuant to Ind.Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before
any court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the
case.



**FILED**

Jun 19 2013, 7:05 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARK SMALL**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**PATRICK M. RHODES**
DCS, Marion County Local Office
Indianapolis, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF: M.W., Minor Child,<br>A CHILD IN NEED OF SERVICES,<br><br>E.W., Father,<br><br>    Appellant-Respondent,<br><br>       vs.<br><br>INDIANA DEPARTMENT OF CHILD<br>SERVICES,<br><br>    Appellee-Petitioner. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   No. 49A05-1210-JC-500<br>)<br>)<br>)<br>)<br>)<br>) |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marilyn A. Moores, Judge
The Honorable Rosanne Ang, Magistrate
Cause No. 49D09-1207-JC-29412

**June 19, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

E.W. ("Father") appeals the juvenile court's parental participation order entered as part of its dispositional order. Father raises one issue which we revise and restate as whether the court abused its discretion in ordering him to undergo a substance abuse assessment and submit to random drug screens. We affirm.

FACTS AND PROCEDURAL HISTORY

On July 20, 2012, M.W., who was born on May 6, 2012, was dropped on her head by Father from approximately waist high. Father and S.T. ("Mother") did not seek immediate medical treatment for M.W.[1] On July 23, 2012, Father and Mother took M.W. to Methodist Hospital for a previously scheduled appointment. Doctors observed a bump on M.W.'s head, and Father disclosed that M.W. had been dropped. M.W. was then transferred to Riley's Children Hospital.

Later that day the Marion County Department of Child Services ("MCDCS") received a report alleging abuse of M.W. The report stated that M.W. had a skull fracture and subdural bleeding on her brain. On the same day, the MCDCS received a report that Mother visited Health Net with suicidal thoughts and had a plan to kill herself by taking pills. The report stated that M.W. had been dropped on the floor and that no medical attention had been sought. It also stated that Father seemed aggressive and angry and that there had been a history of domestic violence.

On July 25, 2012, the MCDCS filed a Verified Petition Alleging Children to be in Need of Services ("CHINS").[2] In its petition, the MCDCS alleged that M.W. was a

_____

[1] Mother does not participate in this appeal.

[2] The petition also alleged that H.T., another child of Mother, was a CHINS, but Father is not

2

CHINS and that Mother and Father were unable to provide M.W. with a "safe and appropriate living environment." Appellant's Appendix at 24. That same day, the MCDCS filed the Intake Officer's Report of Preliminary Inquiry and Investigation, which alleged that Father had stated that Mother was now drinking about a pint of vodka every night and that when he tries to leave Mother will "get physical and hit him." Id. at 27. The report stated that Mother indicated that she "has a few shots a few times a week and will smoke pot when she is out of her anxiety medication or her medication is not working." Id. The report also indicated that a social worker had stated that Mother had started drinking heavily, "is a mean drunk," hits Father when she drinks, that there were concerns of domestic violence in the home, and further alleged that Father had attempted suicide twice. Id. at 28. The report also provided that a nurse indicated that Mother stated that she drinks and smokes marijuana to relax and that Father had hit her in the past, and that the nurse believed that Father "has difficulties controlling his anger and domestic violence resources should be addressed." Id. at 29.

That same day, the court held a hearing and found that there was probable cause to believe M.W. was a CHINS because she was seriously endangered.[3] The court entered an Order Regarding Children in Need of Services Initial / Detention Hearing which observed that M.W. was at Riley Hospital at that time and ordered continued placement of M.W. with Mother and Father "contingent upon [Mother] and [Father] participating in

H.T.'s father. While H.T. was mentioned in the various pleadings and orders, this opinion focuses on M.W.

[3] The record does not contain a copy of the transcript of this hearing.

Homebuilders, [Mother] submitting to random drug and alcohol screens, [Mother] taking her medications as prescribed, [and Mother] and [Father] completing a domestic violence assessment and following any recommendations . . . ." Id. at 44.

On July 30, 2012, the MCDCS filed a Request for Authorization for Removal from Placement with Mother, Request for Authorization of Placement in Relative Care, Foster Care, and/or Therapeutic Foster Care, Request for a Detention Hearing and Order with Proper Detention Findings. The request attached an affidavit of the family case manager which alleged that Mother had been drinking excessively and that she was so intoxicated that she did not wake while her home was being burglarized and that M.W. was present during the time Mother was intoxicated and during the burglary.

On August 1, 2012, the MCDCS filed a Notice of Removal from Placement with Mother and Request for a Detention Hearing on or before August 2, 2012. The notice alleged that the MCDCS and Homebuilders were unable to ensure the safety of M.W. in Mother's care and that the MCDCS proceeded with an emergency removal on July 31, 2012. The notice attached an affidavit from the family case manager which alleged that a supervisor at Homebuilders stated that there was "another incident where [Mother] had been drinking and became physical with [Father]." Id. at 56. A letter from Melissa Kurup, a Homebuilders supervisor, was also attached to the notice which alleged that Father was not currently residing with Mother but stayed at the home last night "because he was afraid for the safety of the children." Id. at 57. The letter also stated: "Based on the volatility of this relationship it is not in anyone's best interest for [Father] to feel 'forced' to remain in the home out of concern for the children's welfare." Id.

4

On August 2, 2012, the court held a detention hearing,[4] after which the court entered an Order Regarding Children in Need of Services Detention Hearing which indicated that there was sufficient evidence to support the Family Case Manager's Preliminary Inquiry and Affidavit of Probable Cause that M.W. was a CHINS and that detention was necessary to protect M.W.

On August 3, 2012, the court held a continued initial hearing[5] and entered an order titled Order Regarding Children in Need of Services Pre-Trial Hearing which denied Father's request that M.W. be placed with him.

On August 17, 2012, the court held another hearing[6] and entered an order which found that Mother admitted that M.W. was a CHINS because M.W. suffered a head injury from falling from her chair and Mother and Father "did not immediately take her to the hospital, even though [Mother] told [Father] that they should take her." Id. at 77. According to the court's order, Mother also admitted that she "has a history of anxiety and depression and has been drinking more alcohol lately when she is under stress" and "she has been involved in domestic disputes with [Father]." Id. The court's order also observed that Father waived fact-finding. The court adjudicated the children to be CHINS, ordered the MCDCS to file a predispositional report, and set the matter for disposition.

---

[4] The record does not contain a copy of the transcript of this hearing.

[5] The record does not contain a copy of the transcript of this hearing.

[6] The record does not contain a copy of the transcript of this hearing.

Under the heading "Options Recommended for the Plan of Care, Treatment, Rehabilitation, or Placement of the Child," a predispositional report dated August 31, 2012, states:

> M.   SUBSTANCE ABUSE ASSESSMENT: [Father] will complete a substance abuse assessment and follow all treatments and successfully complete all treatment recommendations developed as a result of the substance abuse assessment.
>
> N.   RANDOM DRUG SCREENS:  [Father] must submit to random drug/alcohol screens within one hour of request.  If positive results are found the individual will be responsible for costs associated with a screening.   If negative results are indicated, DCS will be responsible for costs associated with a screening.  Any request for drug screen that is not completed in a timely manner will result in a positive result indication.

Id. at 95.   The report later states that Father "should participate in a substance abuse assessment and treatment to help him understand triggers that are causing him to consistently use illegal substances" and that he "should participate in random alcohol and drug screens to demonstrate that he is currently not using." Id. at 97.

On September 7, 2012, the court held a dispositional hearing.  At the beginning of the hearing, the court asked the parties if they objected to the recommendation contained in the predispositional report, and Father's attorney objected to the substance abuse assessment and random screens because they were not supported by the petition or the preliminary inquiry.  Father's attorney also objected to the recommendation regarding domestic violence.  At one point, the attorney for the MCDCS stated that Mother had reported that she and Father had "use[d] together."  Transcript at 3.

The court asked Father's attorney if she had any response, and Father's attorney objected, stating in part:

6

The facts are not supported by the petition. . . . I mean I think it's questionable and there's nothing concrete to support that. I believe if DCS believes [Father] is using substances, then maybe they need to file a motion and ask the Court to testify . . . [o]r ask the Court to authorize drug screens at that time but right now, there's nothing concrete to support it.

Id. at 4.

The court then asked about the conversation with Mother, and the MCDCS's attorney stated that the conversation was between Mother, the case manager, and the guardian ad litem. The case manager then stated that Mother had mentioned that Father uses marijuana, that they used together, and that that was "one of the concerns that [Mother] had as far as [Father]." Id. at 6. The case manager stated that the conversation with Mother had occurred about a week or two previously. The guardian ad litem then stated that he was "in agreement with DCS" and that "it was said by [Mother] in relationship to the conversation [they] were having about services." Id. Father's attorney then stated: "Still Judge, that's not specific[]. She didn't say when they were using or, or anything towards that." Id.

After further discussion, the court stated: "I am going to order that [Father] do the screens and the assessment. If in fact the treatment isn't warranted then the assessment will give us that information. But I do think that there is a sufficient basis for that." Id. at 7. The court also stated that it would order a domestic violence assessment. Father's attorney then asked that the court not order Father to pay a ten dollar reimbursement. During questioning from the trial court, Father's attorney indicated that Father typically works forty hours per week and earns eleven dollars per hour. The court indicated that it

7

would order the reimbursement given that Father has the financial means and that there are a number of services that were being referred and ordered.

The court subsequently entered its Dispositional Order which found that it was in M.W.'s best interests to be continued to be removed from the home environment because the allegations were found to be true. The court ordered that M.W. be under the temporary supervision of the MCDCS for her protection and that the permanency plan for M.W. was reunification with Mother and Father. The court ordered that the recommendations made by the MCDCS in the predispositional report should be adopted by the court.

The issue is whether the court abused its discretion in ordering Father to participate in a substance abuse assessment and random drug screens. Father argues that there is no substantial basis for the court's order that he undergo evaluation for substance abuse or engage in such services. He maintains that "it would seem reasonable that the services a parent is to complete under any type of order or agreement have a rational connection with the reasons for that parent coming to the attention of the State." Appellant's Brief at 12. He further asserts that "[t]here is no mention in the Verified Petition or the Intake Officer's Report of Preliminary Inquiry and Investigation of [Father's] use of any controlled substances or alcohol." Id. at 13. Father contends that "[t]he only mention of marijuana use occurred in unsworn statements during the hearing that arose out of a colloquy between the juvenile court, counsel for DCS, the [family case manager], and the Guardian Ad Litem," and that those statements did not constitute evidence. Id. In the conclusion portion of his brief, Father requests that the order of the

8

juvenile court that he undergo substance abuse evaluation and treatment and that he pay costs related thereto be vacated.

The MCDCS argues that the rules of evidence do not apply to preliminary juvenile matters and the court can consider a wider variety of evidence than in an adversarial hearing. The MCDCS asserts that the evidence revealed that Mother was concerned about Father's use of marijuana and that the parents sometimes used marijuana together. The MCDCS points out that Mother and Father had a history of domestic violence that was exacerbated by Mother's substance abuse and that one of the reasons the MCDCS removed M.W. was Mother's involvement in domestic violence with Father.

When a court's order contains specific findings of fact and conclusions of law, we engage in a two-tiered review. In re T.S., 906 N.E.2d 801, 804 (Ind. 2009); Hallberg v. Hendricks Cnty. Office of Family & Children, 662 N.E.2d 639, 643 (Ind. Ct. App. 1996). First, we determine whether the evidence supports the findings. T.S., 906 N.E.2d at 804. Then, we determine whether the findings support the judgment. Id. Findings are clearly erroneous when there are no facts or inferences drawn therefrom that support them. Id. A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the resulting judgment. Id. The appellate court should not reweigh the evidence or judge the credibility of witnesses, but should view the evidence and its reasonable inferences most favorably to the judgment. Id.

We begin by addressing Father's argument that the statements of the family case manager and the guardian ad litem at the hearing did not constitute evidence. We note that a juvenile court can admit a dispositional report of DCS even if it includes hearsay.

9

See In re K.D., 962 N.E.2d 1249, 1259 (Ind. 2012) ("At a dispositional hearing, the juvenile court can admit the dispositional report of DCS even if it includes hearsay."); Ind. Code § 31-34-19-2 ("Any predispositional report may be admitted into evidence to the extent that the report contains evidence of probative value even if the report would otherwise be excluded.").

Even if the Rules of Evidence applied to the dispositional hearing, we do not find that Father's arguments require reversal. Father concedes that he did not object to the matters related to the juvenile court by the family case manager and the guardian ad litem, but argues, without citation to authority, that the error is not waived. Failure to object to the admission of evidence results in waiver of the error. Raess v. Doescher, 883 N.E.2d 790, 796 (Ind. 2008), reh'g denied. The Indiana Supreme Court has observed that "[a] claim of trial court error in admitting evidence may not be presented on appeal unless there is a timely trial objection 'stating the specific ground of objection, if the specific ground was not apparent from the context.'" Id. at 797 (citing Ind. Evidence Rule 103(a)(1)). "To preserve a claimed error in the admission of evidence, a party must make a contemporaneous objection that is sufficiently specific to alert the trial judge fully of the legal issue." Id. (citation and internal quotation marks omitted). Because Father failed to object to the statements of the family case manager and the guardian ad litem, he has waived the issue on appeal. See id. (holding that the defendant may not present grounds on appeal that were not made at trial to support an objection and that the defendant's claim was barred); Slauter v. Whitelock, 12 Ind. 338, 340 (1859) (holding that if no motion was made by either party with respect to the receipt of unsworn

testimony then "it would amount to an acquiescence in the reception of his statements as evidence in the case").

To the extent that Father argues that there is no substantial basis for the court's order that he undergo evaluation for substance abuse or engage in such services, we disagree. Ind. Code § 31-34-20-3 provides:

> If the juvenile court determines that a parent, guardian, or custodian should participate in a program of care, treatment, or rehabilitation for the child, the court may order the parent, guardian, or custodian to do the following:
>
> (1) Obtain assistance in fulfilling the obligations as a parent, guardian, or custodian.
>
> (2) Provide specified care, treatment, or supervision for the child.
>
> (3) Work with a person providing care, treatment, or rehabilitation for the child.
>
> (4) Participate in a program operated by or through the department of correction.

"Although the juvenile court has broad discretion in determining what programs and services in which a parent is required to participate, the requirements must relate to some behavior or circumstance that was revealed by the evidence." In re A.C., 905 N.E.2d 456, 464 (Ind. Ct. App. 2009).

The record reveals that Father had previously smoked marijuana with Mother, and that Mother was concerned about this. The record also reveals that Mother drinks heavily and that there were concerns regarding domestic violence. After the statements of the family case manager and the guardian ad litem at the hearing, the trial court found that there was "sufficient basis" for Father to complete a substance abuse assessment and

11

random drug screens. Transcript at 7. We also observe that the predispositional report recommended that Father complete a substance abuse assessment and submit to random drug screens. Under the circumstances, we conclude that Father's argument is an invitation for us to reweigh the evidence, which we cannot do.

For the foregoing reasons, we affirm the trial court's order.

Affirm.

RILEY, J., and BRADFORD, J., concur.