**FOR PUBLICATION**



ATTORNEY FOR APPELLANT V.S.:

**HAROLD E. AMSTUTZ**
Lafayette, Indiana

ATTORNEYS FOR APPELLEE INDIANA
DEPARTMENT OF CHILD SERVICES:

**LUMINITA NODIT**
Indiana Department of Child Services
Tippecanoe County Local Office
Indianapolis, Indiana

**ROBERT J. HENKE**
Indiana Department of Child Services
Central Administration
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF: V.C., ) | |
| CHILD ALLEGED TO BE IN NEED ) | |
| OF SERVICES: ) | |
| ) | |
| V.S., ) | |
| ) | |
| Appellant-Respondent ) | |
| ) | |
| vs. ) | No. 79A02-1112-JC-1172 |
| ) | |
| INDIANA DEPARTMENT OF ) | |
| CHILD SERVICES, ) | |
| ) | |
| Appellee-Petitioner. ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Loretta H. Rush, Judge
The Honorable Faith Graham, Magistrate
Cause No. 79D03-1108-JC-181

OPINION - FOR PUBLICATION

**BRADFORD, Judge**

Appellant-Respondent V.S. ("Father") appeals the juvenile court's determination that V.C. is a Child in Need of Services ("CHINS"). On appeal, Father contends that the juvenile court erroneously denied his procedural due process rights by denying his requests to issue a subpoena to a potential witness and for a continuance of the fact-finding hearing. Father also contends that a CHINS determination was unnecessary because a suitable relative placement existed at the time V.C. was removed from Mother's care.[1] We affirm.

## FACTS AND PROCEDURAL HISTORY

The Indiana Department of Child Services ("DCS") was involved with Mother and V.C. prior to the initiation of the instant CHINS proceedings. V.C. had previously been determined to be a CHINS because Mother's mental state had deteriorated to the point where Mother could no longer care for V.C. The prior CHINS proceeding was successfully terminated after Mother's mental state improved to the point where DCS representatives believed that Mother could adequately care for V.C. At the conclusion of the prior CHINS proceedings, Mother was instructed to continue certain services on her own, and her sister, V.C.'s maternal aunt, was approved to care for V.C. for short periods of time if Mother's mental state deteriorated to the point that Mother required a short break from V.C.

---

[1] Mother admitted below that V.C. is a CHINS, and, as such, does not appeal the juvenile court's determination to that effect.

On or about August 26, 2011, Mother contacted the Lafayette Police Department and reported that she required assistance because her mental state had deteriorated to the point where she could no longer provide suitable care for V.C. Officer James Jarred spoke with Mother and contacted Michael Tajc of DCS. Tajc spoke to Mother who again reiterated that her mental state had deteriorated to the point that she was unable to provide suitable care for V.C. Mother informed Tajc that V.C.'s father was incarcerated and that she had family members who may be willing to accept custody of V.C., but refused to provide Tajc with these family members' names.

As a result of Tajc's conversations with Mother, on August 30, 2011, DCS filed a Request for Taking Custody and a Request for Filing of CHINS with the juvenile court. On this same date, the juvenile court entered an order finding that Father would be incarcerated in the Department of Correction ("DOC") until approximately September 22, 2016, and ordered that Father should appear at all hearings telephonically. On August 31, 2011, DCS filed a petition alleging that V.C. is a CHINS. The juvenile court conducted a detention hearing at the conclusion of which it found that probable cause existed to believe that V.C. is a CHINS and granted DCS temporary wardship over V.C.

On September 9, 2011, the juvenile court conducted an initial hearing at which Mother admitted the CHINS allegations. Father denied the CHINS allegations, asserted that he was aware of his rights, and stated that he did not need an attorney. The juvenile court set the matter for a fact-finding hearing.

On September 30, 2011, Father requested that the juvenile court issue a subpoena to V.C.'s maternal aunt and filed an affidavit asserting that he believed that maternal aunt would testify to a willingness to accept custody of V.C. Father did not include maternal aunt's address or any other contact information for maternal aunt in his affidavit. The juvenile court did not issue the subpoena because Father had failed to provide the court with maternal aunt's address.

On October 13, 2011, the juvenile court conducted a fact-finding hearing at which Father appeared telephonically. Father requested a continuance of the hearing for the purpose of securing maternal aunt's testimony regarding her potential willingness to accept custody of V.C. DCS agreed to stipulate that maternal aunt would indicate a willingness to be considered as a relative placement of V.C. The juvenile court denied Father's request for a continuance, went forward with the fact-finding hearing, and heard evidence presented by both DCS and Father. At the conclusion of the fact-finding hearing, the juvenile court determined that V.C. was a CHINS. The juvenile court proceeded to conduct a disposition hearing following which it ordered that V.C. remain in foster care. On December 14, 2011, Father filed a Motion to Correct Error, which was denied by the juvenile court. This appeal follows.

## DISCUSSION AND DECISION

### I. Whether the Juvenile Court Denied Father's Procedural Due Process Rights

Father contends that the juvenile court denied his procedural due process rights by erroneously denying his requests to issue a subpoena to V.C.'s maternal aunt and for a

continuance of the fact-finding hearing. Indiana Code section 31-32-2-3(b) (2011) provides that during a CHINS proceeding, a parent is entitled to (1) cross-examine witnesses, (2) obtain witnesses or tangible evidence by compulsory process, and (3) introduce evidence on his behalf. In the instant matter, Father alleges that the juvenile court's denial of his request to issue a subpoena to maternal aunt and its subsequent denial of his request for a continuance of the fact-finding hearing violated his procedural due process rights because the denials limited his opportunity to obtain witnesses by compulsory process and to introduce evidence on his behalf.[2]

## A. Issuance of a Subpoena

Father argues that the juvenile court erroneously failed to issue his requested subpoena to maternal aunt. Father claims that it was necessary to subpoena maternal aunt because he believes that maternal aunt would have indicated a willingness to accept custody of V.C. rather than having V.C. placed in foster care. The juvenile court denied Father's request to issue a subpoena to maternal aunt because Father "failed to provide addresses for persons he wishes to subpoena."[3] Appellant's App. p. 35.

Father concedes that he did not provide the juvenile court with maternal aunt's address, but argues that the juvenile court erred by failing to conduct its own investigation into maternal aunt's contact information after Father provided her name to the court as well as possible avenues for obtaining the necessary information. In support, Father argues that

---

[2] Father does not argue that he was denied the ability to cross-examine DCS's witnesses.

[3] Despite Father's failure to provide the juvenile court with the necessary contact information, the juvenile court granted Father's request to subpoena DCS caseworker Meadows.

5

"Mother, DCS or the sheriff, through NCIC, know or can obtain [maternal aunt's] address at this Court's discretion." Appellant's App. p. 34. Father argues that he was unable to obtain maternal aunt's address himself because "these people won't let me out for a period of time, out of prison so I could go hunt for it." Tr. p. 69. Father, however, does not demonstrate that his incarceration prevented him from contacting Mother or DCS to obtain maternal aunt's contact information or that he did not have access to research databases where he might have been able to find maternal aunt's contact information.[4]

During the fact-finding hearing, the juvenile court informed Father that the subpoena was not issued because in light of Father's failure to provide the court with maternal aunt's address, "there was no valid address" at which the court could serve the subpoena to maternal aunt. Tr. p. 70. The juvenile court further informed Father that "it's not DCS's responsibility or the Court's responsibility to go out and find this person." Tr. p. 66. Father has provided no authority asserting that the juvenile court has such a responsibility, and we find none. Thus, we agree with the juvenile court that it is not the court's responsibility to "go out and find" the person named in the subpoena.

Trial Rule 45(C) provides that service of a subpoena "shall be made by delivering a copy thereof to" the person named in the subpoena. Service can be made on the individual or the individual's agent either in person or by mail. *See* Trial Rules 4.1, 4.16, and 5(B). Thus, even if the juvenile court had issued the subpoena, here, in light of Father's failure to provide the juvenile court with maternal aunt's address, the juvenile court would likely have been

---

[4] The record reveals that Father's incarceration did not prevent him from conducting research into legal precedent which he believed supported his position at the fact-finding hearing.

6

unable to serve the subpoena upon maternal aunt. As such, we cannot say that the juvenile court erroneously denied Father's request to issue a subpoena to maternal aunt.

## B. Continuance of the Fact-finding Hearing

Father also argues that the juvenile court erred in denying his request for a continuance of the fact-finding hearing. Father argues that a continuance was necessary to allow Father the opportunity to secure maternal aunt's testimony regarding whether she would be willing to accept custody of J.C. Indiana Trial Rule 53.5 provides that a hearing may be continued at the discretion of the court upon a showing of good caused by affidavit or other evidence. The granting or denial of a continuance is clearly within the discretion of the trial court. *Hallberg v. Hendricks Cnty. Office of Family & Children*, 662 N.E.2d 639, 646 (Ind. Ct. App. 1996). Denial of the motion is an abuse of discretion only if the movant demonstrates good cause for granting the motion. *Id*. We conclude that Father has failed to do so.

Father argues that the juvenile court abused its discretion in denying his request for a continuance because he successfully demonstrated good cause for said continuance. In support, Father claims that maternal aunt's testimony relating to her potential willingness to accept custody of V.C. was essential to his argument that no CHINS petition should have been filed because DCS had "set up a plan in the prior CHINS case that, if the [M]other's mental health deteriorated, [V.C.] would be placed with his aunt." Appellant's Br. p. 9. Father also claims that nothing in the record suggests that the continuance would cause any undue delay or hardship.

Despite Father's claim to the contrary, we agree with DCS's claim that maternal aunt's testimony was not essential because Father misconstrues the evidence relating to the prior case plan. Father called former case manager Kirstin Meadows as a witness during the fact-finding hearing for the purpose of establishing that a safety plan was in place to grant maternal aunt custody of V.C. if Mother's mental health deteriorated. Meadows was the case manager assigned to Mother's prior CHINS case and was most familiar with the safety plan put in place at the conclusion of the prior CHINS case. While testifying, Meadows clarified that maternal aunt had not been approved to take custody of V.C. for long periods of time, but rather had only been approved to provide short-term temporary care for V.C., essentially babysitting, if Mother's mental state necessitated a short break from the children. In addition, with respect to placement, DCS agreed to stipulate that maternal aunt would be willing to be considered as a relative placement for V.C. despite her failure to respond to DCS's inquires as to the same, and, if necessary, indicated a willingness to investigate whether maternal aunt would be a suitable placement for V.C.

In light of Meadow's testimony refuting Father's claim that no CHINS determination was necessary because maternal aunt had been approved to accept custody of V.C., as well as DCS's stipulation to Father's desired testimony that maternal aunt would be willing to be considered as a relative placement for V.C., we conclude that Father has failed to demonstrate good cause for granting his request for a continuance. *Hallberg*, 662 N.E.2d at 646. As such, we conclude that the juvenile court acted within its discretion in denying Father's request for a continuance.

8

Having concluded that the trial court did not err in failing to issue the requested subpoena to maternal aunt after Father failed to provide the juvenile court with maternal aunt's address, and that the juvenile court acted within its discretion in denying Father's request for a continuance, we further conclude that the juvenile court did not violate Father's procedural due process rights as set forth in Indiana Code section 31-32-2-3(b).

## II. Whether a CHINS Determination was Necessary

Father also contends that the juvenile court erroneously determined that V.C. is a CHINS. Specifically, Father contends that no CHINS determination was necessary because a suitable relative placement was available. Father's entire argument, however, is based on the false premise that maternal aunt had previously been approved to take custody of V.C. if Mother's mental state deteriorated. Again, Meadows testified that despite Father's claim to the contrary, maternal aunt had not been approved to take custody of V.C. for long periods of time, but rather had only been approved to provide short-term temporary care for V.C., *i.e.* that maternal aunt had been approved to babysit for V.C. Because the evidence demonstrates that there was no approved suitable relative placement available to take custody of V.C. at the time when Mother contacted the Lafayette Police Department and informed DCS that she was unable to provide suitable care for V.C., and that Father was incarcerated in the DOC until at least 2016, we cannot conclude that a CHINS determination was unnecessary.[5] *See*

---

[5] We note that Father does not challenge the sufficiency of the evidence supporting the juvenile court's determination that V.C. is a CHINS, but rather merely asserts that no CHINS determination was necessary. Thus, having concluded that in light of the circumstances, a CHINS determination was indeed necessary because there was no approved suitable relative placement available at the time that DCS again became involved with V.C., we need not review the sufficiency of the evidence supporting the juvenile court's determination that V.C. was a CHINS.

9

*In re T.S.*, 881 N.E.2d 1110, 1114 (providing that the trial court had no option but to declare child a CHINS where there was no evidence for finding that grandmother would be a viable placement alternative).

The judgment of the juvenile court is affirmed.

VAIDIK, J., and CRONE, J., concur.