Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

ATTORNEY FOR APPELLANT:

**HAROLD E. AMSTUTZ**
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**LUMINITA NODIT**
Indiana Department of Child Services
Lafayette, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

FILED
May 31 2012, 9:24 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF V.C., CHILD        )
ALLEGED TO BE IN NEED OF SERVICES:  )
                                    )
V.S.,                               )
                                    )
    Appellant-Respondent,        )
                                    )
      vs.                     )        No. 79A02-1201-JC-43
                                    )
INDIANA DEPARTMENT OF               )
CHILD SERVICES,                     )
                                    )
    Appellee-Petitioner.         )

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Loretta H. Rush, Judge
The Honorable Faith A. Graham, Magistrate
Cause No. 79D03-1108-JC-181

**May 31, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

V.S. ("Father") is the father of V.C., a child determined to be a Child in Need of Services ("CHINS").[1] Father appeals the trial court's order, following a hearing regarding visitation, requiring him to sign medical releases to permit the Indiana Department of Child Services ("DCS") to obtain complete copies of his mental health records. Concluding that the order requiring Father to sign medical releases is neither a final judgment nor an appealable interlocutory order, we sua sponte dismiss this appeal for lack of subject matter jurisdiction.

**Facts and Procedural History**

V.C., born November 4, 2001, is the biological child of Father and U.C. ("Mother"). On August 26, 2011, V.C. was removed from Mother's care due to Mother's deteriorating mental health. Father was and continues to be incarcerated in the Indiana Department of Correction ("DOC") with a release date of approximately September 22, 2016. On October 13, 2011, the trial court conducted a factfinding hearing, following which the trial court determined that V.C. was a CHINS. V.C. is currently in foster care.

On November 15, 2011, the trial court conducted a visitation hearing to determine whether and under what circumstances V.C. should visit with Father at the DOC. Father appeared telephonically and pro se.[2] Mother appeared at the hearing and stated that she was

---

[1] We recently affirmed the trial court's CHINS determination by published opinion. *See In re V.C.*, No. 79A02-1112-JC-1172, 2012 WL 1453839 (Ind. Ct. App. Apr. 27, 2012).

[2] After being advised of his right to counsel, Father did not request an attorney. Appellant's App. at 9.

not in favor of Father having visitation with V.C. DCS was similarly not in favor of visitation.

During the hearing, V.C.'s therapist, Kimberly O'Leary, testified that she was not in favor of V.C. visiting with Father at this time. In addition to stating that V.C. did not want to visit with Father at the prison, O'Leary stated that V.C. had been in his foster home for only three months and believed that he needed another six to eight weeks to adjust before moving to some sort of supervised visitation with Father. O'Leary believed that visitation eventually could begin with supervised phone visits followed by supervised physical visits.

When asked by Mother's counsel if she was aware of Father's mental health issues, O'Leary responded that she was indeed aware of instances where Father had smeared feces on the walls of his jail cell and had made chess figures out of his feces. O'Leary stated that she was familiar with psychiatric records indicating that Father had claimed to mental health professionals that he hears voices and had been hearing voices since the age of twelve or fourteen. The trial court inquired, "[Y]ou said that you have not reviewed any of father's psychological records or anything like that and you'd like to see that in order to kind of better understand what would be necessary to prepare [V.C.] for these sorts of visits?" Tr. at 160. O'Leary answered, "Correct." *Id.* Father then asked O'Leary if she would be willing to review whatever documents he presented to her concerning his mental health status. *Id.* at 161. O'Leary answered in the affirmative.

Thomas Brennan, V.C.'s court-appointed special advocate, testified that he was wavering as to whether he would recommend visitation based upon O'Leary's testimony.

3

Brennan stated that he had reviewed some of Father's psychiatric records and was concerned that Father "seemed to be rather disturbed." *Id*. at 165. Father offered to send Brennan documents regarding his "side of the story" to compare to the psychiatric opinions. *Id*. at 166. Brennan stated that he would be willing to consider any documents provided.

Father testified that he had smeared his feces on the wall in his jail cell approximately four times and that he also had made a chess set out of his feces because he was bored. *Id*. at 174. Father stated that, although he had told mental health professionals that he hears voices and began hearing voices when he was twelve or fourteen years old, he had lied. Father stated that he lied to several doctors at Logansport State Hospital about his mental health because he was being tortured and sexually abused by correctional officers at the jail and did not want to return. Father also admitted that he has attempted suicide on two occasions while incarcerated.

At the conclusion of the hearing, Father volunteered to send all the witnesses and the court "my argument … my argument has the laws and the facts combined so they can get an understanding of what I'm trying to project … and to put into context those doctor reports." *Id*. at 184-85. DCS interjected to indicate that it was not confident that it had Father's complete mental health records. Father responded, "I'll send them to them." *Id*. at 185. When asked by the court if he would sign a release for the DCS to obtain the records, Father went on to state, "I could just send them to them. They'll get everything; I mean they'll get even the conduct reports that I've got in the jail, the pictures that were attached; everything is all going to be in there." *Id*. at 186. When DCS indicated that it was having trouble

obtaining records from Logansport State Hospital, Father stated, "I'm going to send them a copy of it." *Id.* The court interrupted, "All right the problem with that is they don't have any way of knowing if it's a complete document unless it comes directly from Logansport certified as a complete document." *Id.* Father assured the court, stating, "I'm not going to alter anything; I want them to see the whole truth and nothing but the truth." *Id.* at 187. After further discussion regarding the necessity for a signed release to ensure that full records were obtained, the court stated that it would order Father to sign a release for the DCS to obtain his complete mental health records. Father did not object.

On November 21, 2011, the trial court entered a written order which provides in relevant part:

> Court directs [V.C.'s] therapist to begin preparing [V.C.] for contact with his father. Court ORDERS DCS to provide [V.C.'s] therapist with a copy of father's mental health [records]. Father may supplement his mental health records by providing additional documents. Court ORDERS Father to sign any releases necessary for DCS to receive full certified mental health record[s] from the Department of Correction[] and/or any other mental health treatment facility from whom he [] has received treatment.

Appellant's App. at 60. Father filed his pro se "Motion to Correct Order" on December 9, 2011, which the trial court denied on December 14, 2011. Counsel was appointed for Father for purposes of appeal, and Father filed a notice of appeal on January 17, 2012.

**Discussion and Decision**

During the visitation hearing, Father volunteered and agreed to supply the DCS with his complete mental health records. Due to the trial court's concern that some assurance needed to be made that the records were actually complete certified copies, the court ordered

5

Father to sign a release for the DCS to obtain discovery of the records. Father now attempts to raise a myriad of issues regarding the propriety of the trial court's order. However, we determine sua sponte that we lack subject matter jurisdiction to entertain this appeal.

The lack of appellate subject matter jurisdiction may be raised at any time, and where the parties do not raise the issue, this Court may consider it sua sponte. *Georgos v. Jackson*, 790 N.E.2d 448, 451 (Ind. 2003). It is well settled that this Court has jurisdiction in all appeals from final judgments. Ind. Appellate Rule 5(A). A "final judgment" is one which "disposes of all claims as to all parties." Ind. Appellate Rule 2(H)(1). Specifically, a final judgment "disposes of all issues as to all parties thereby ending the case." *Georgos,* 790 N.E.2d at 451. It leaves nothing for future determination. *Id.* The trial court's November 15, 2011, order requiring Father to sign the medical releases neither disposes of any claims between the parties nor disposes of the CHINS visitation issue. It was merely an order permitting discovery of Father's mental health records. Therefore, it is not a final judgment.

Consequently, Father cannot appeal the trial court's order unless it is an appealable interlocutory order. *See Bacon v. Bacon*, 877 N.E.2d 801, 804 (Ind. Ct. App. 2007), *trans. denied*. "An interlocutory order is one made before a final hearing on the merits and requires something to be done or observed but does not determine the entire controversy." *Id.* Indiana Appellate Rule 14(A) provides that certain interlocutory orders are appealable as a matter of right. However, this Court has expressly held that a discovery order requiring a party to execute a medical release is not appealable as of right. *Rausch v. Finney*, 829 N.E.2d 985, 986 (Ind. Ct. App. 2005), *trans. denied*. Other interlocutory orders may be

6

appealed "if the trial court certifies its order and the Court of Appeals accepts jurisdiction over the appeal." Ind. Appellate Rule 14(B). Such certification and acceptance of jurisdiction has not occurred in this case.

In sum, the trial court's order from which Father appeals is neither a final judgment nor an interlocutory order appealable as of right. Additionally, the procedure for certification of a discretionary interlocutory appeal has not taken place here. As a result, we are without subject matter jurisdiction to consider Father's appeal. Therefore, we dismiss.

Dismissed.

VAIDIK, J., and BRADFORD, J., concur.