Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 08 2014, 8:58 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**STEVEN J. HALBERT**
Carmel, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
**DAVID E. COREY**
Deputy Attorney Generals

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF:<br>A.P. (MINOR CHILD), CHILD IN NEED OF SERVICES<br><br>AND<br><br>J.H. (FATHER)<br><br>     Appellant-Respondent,<br><br>     vs.<br><br>THE INDIANA DEPARTMENT OF CHILD SERVICES,<br><br>     Appellee-Petitioner. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     No. 49A02-1309-JC-785<br>)<br>)<br>)<br>)<br>)<br>) |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Danielle Gaughan, Magistrate
The Honorable Marilyn Moores, Judge
Cause No. 49D09-1305-JC-16180

**May 8, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

A.P. was adjudicated a Child In Need of Services by the Marion Superior Court. A.P.'s Father, J.H. ("Father") appeals and argues that his due process rights were violated because the trial court considered Mother's admission that A.P. was a CHINS at Father's fact-finding hearing. Father also challenges the evidentiary sufficiency of the CHINS adjudication.

We affirm.

**Facts and Procedural History**

A.P. was born out of wedlock to Mother and Father on April 15, 2009. On May 24, 2013, the Department of Child Services ("DCS") filed a petition that A.P. was a CHINS because his Mother suffers from bipolar disorder, suicidal tendencies, and substance abuse. At the initial hearing, the child was placed with his maternal grandmother. The court authorized Mother to reside with maternal grandmother and A.P so long as she participated in court-ordered services.

At Father's initial hearing held on June 6, 2013, he contested the CHINS petition and requested a fact-finding hearing. Father's request for unsupervised parenting time was granted and A.P.'s placement with maternal grandmother was maintained. At this same hearing, Mother admitted that A.P. was a CHINS. The trial court took Mother's written admission under advisement pending the outcome of Father's contest of the CHINS petition.

Father continually requested that A.P. be placed in his care, and the guardian ad litem also recommended that the child be placed with Father. Father has custody of his two daughters, and he provides adequate food, shelter, and clothing. However, Father's

girlfriend also lives in the home and uses marijuana daily. She uses marijuana in the home either in her bedroom or when the children are outside. She was arrested for possession of marijuana in 2012 and has 2004 and 2006 convictions for possession of cocaine. Father admitted that his girlfriend uses marijuana in the home when the children are present. Father testified that A.P. would not be left alone with his girlfriend.

Father and his girlfriend signed a safety plan, and discussed that girlfriend would have to move out of the home if she failed to comply with the plan. But family case manager Crystal Tracy had concerns with A.P.'s possible placement in Father's home despite the signed safety plan. Specifically, she observed that Father was not concerned with girlfriend's marijuana use as long as she did not use it around the children. Tracy also testified to the potential consequences for Father if law enforcement officers discovered marijuana in Father's home.

At the conclusion of the fact-finding hearing, the trial court adjudicated A.P. a CHINS because of Mother's admission and the marijuana use in Father's home. At the August 22, 2013 dispositional hearing, Father was ordered to participate in certain services and was awarded visitation consistent with the Indiana Parenting Time Guidelines. DCS was granted wardship of A.P., and the trial court maintained his placement with maternal grandmother. DCS planned to interview Father's girlfriend to determine whether she would be willing to submit to random drug screens and participate in substance abuse treatment. DCS indicated it would not recommend placing A.P. in Father's home unless his girlfriend participated in substance abuse treatment.

Father now appeals. Additional facts will be provided as necessary.

3

**Standard of Review**

CHINS proceedings are civil actions, and therefore, "'the State must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code.'" In re K.D., 962 N.E.2d 1249, 1253 (Ind. 2012) (quoting In re N.E., 919 N.E.2d 102, 105 (Ind. 2010)). We neither reweigh the evidence nor judge the credibility of the witnesses. Id. We consider only the evidence that supports the trial court's decision and reasonable inferences drawn therefrom. Id. We reverse only upon a showing that the decision of the trial court was clearly erroneous. Id.

Importantly, our supreme court has also observed that "[j]uvenile law is constructed upon the foundation of the State's *parens patriae* power, rather than the adversarial nature of *corpus juris*." Id. at 1255 (citing Kent v. United States, 383 U.S. 541, 554 (1966)).

> Indeed, juvenile court jurisdiction "is rooted in social welfare philosophy rather than in the corpus juris." The purpose of the CHINS adjudication is to "protect the children, not punish parents." The process of the CHINS proceeding focuses on "the best interests of the child, rather than guilt or innocence as in a criminal proceeding."

Id. (quoting In re N.E., 919 N.E.2d at 106).

**I. Due Process**

"Due process protections bar 'state action that deprives a person of life, liberty, or property without a fair proceeding.'" In re G.P., 4 N.E.3d 1158 (Ind. 2014) (citing In re C.G., Z.G. v. Marion Cnty. Dep't of Child Servs., 954 N.E.2d 910, 916 (Ind. 2011)). "[D]ue process protections at all stages of CHINS proceedings are 'vital' because '[e]very CHINS proceeding 'has the potential to interfere with the rights of parents in the

4

upbringing of their children.'" Id. (quoting In re K.D. & K.S., S.S. v. Ind. Dep't of Child Servs., 962 N.E.2d 1249, 1257 (Ind. 2012)). For this reason, a CHINS adjudication is subject to balancing the following three factors:

> (1) the private interests affected by the proceeding; (2) the risk of error created by the State's chosen procedure; and (3) the countervailing governmental interest supporting use of the challenged procedure.

Id. at 1165-66 (citing Mathews v. Eldridge, 424 U.S. 319, 335 (1976)). Ultimately, the resulting balance of those factors must provide "the opportunity to be heard at a meaningful time and in a meaningful manner." Id. at 1166 (citing Mathews, 424 U.S. at at 333).

"[W]hen one parent wishes to admit and one parent wishes to deny the child is in need of services, due process requires the trial court to conduct a fact-finding hearing." In re T.N., 963 N.E.2d 467, 469 (Ind. 2012). "Indiana Code section 31-2-2-3(b) (2011) provides that during a CHINS proceeding, a parent is entitled to (1) cross-examine witnesses, (2) obtain witnesses or tangible evidence by compulsory process, and (3) introduce evidence on his behalf." In re V.C., 967 N.E.2d 50, 52-53 (Ind. Ct. App. 2012).

Here, Father had the right to, and was given the opportunity to, contest the allegation that A.P. needs the coercive intervention of the court. Father was present at all hearings and represented by counsel. Father was aware that Mother had entered a written admission with the court that A.P. is a CHINS, and that the trial court had taken her admission under advisement. At the fact-finding hearing, Father acknowledged Mother's admission that A.P. was a CHINS, and stated, "her portion of the case is not before us at

5

this time." Tr. p. 73. For this reason, we are not persuaded by Father's claim that he was deprived of the right to challenge to Mother's admission.

Because Mother was present at the fact-finding hearing, Father also argues that it "would not have been a burden on the DCS to call [Mother] as a witness to testify as to facts which it believed supported the CHINS petition[.]" Similarly, it would not have been a burden for Father to call Mother as a witness, but he did not do so.

For all of these reasons, we conclude that Father was not denied due process of law, and he also invited the error of which he now complains. See C.T. v. Marion County Dep't of Child Servs., 896 N.E.2d 571, 588 (Ind. Ct. App. 2008) (stating that "[t]he doctrine of invited error, grounded in estoppel, provides that a party may not take advantage of an error that he commits, invites, or which is the natural consequence of his own neglect or misconduct").

## II. Sufficient Evidence

The DCS must prove three elements by a preponderance of the evidence for a juvenile court to adjudicate a child a CHINS. DCS must prove that 1) the child is under the age of eighteen, 2) one of eleven different statutory circumstances[1] exist that would make the child a CHINS; and 3) the child needs care, treatment, or rehabilitation that he or she is not receiving and that he or she is unlikely to be provided or accepted without the coercive intervention of the court. In re K.D., 962 N.E.2d at 1253.

A.P. was alleged to be a CHINS under the general category of neglect as defined in Indiana Code section 31-34-1-1. The statute reads as follows:

---

[1] See Ind. Code §§ 31-34-1-1, -11.

6

A child is a child in need of services if before the child becomes eighteen (18) years of age:

(1) The child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and

(2) The child needs care, treatment, or rehabilitation that;
    (A) The child is not receiving; and
    (B) Is unlikely to be provided or accepted without the coercive intervention of the court.

Ind. Code § 31-34-1-1 (2008).

The trial court concluded that Father's home was appropriate, but the "ongoing regular drug use in Father's home is a risk to [A.P.'s] safety and emotional well being." Appellant's App. p. 68. Father cites to his own testimony in support of his claim that on the date of the fact-finding hearing, his girlfriend was no longer using marijuana in his home. But it is the trial court's role to weigh the credibility of Father's statement against his admission that girlfriend uses marijuana daily. And it is reasonable to conclude that Father' girlfriend is frequently under the influence of marijuana while present in the home even if her use takes place outside its walls.

As we noted above, the purpose of a CHINS adjudication is to protect the child, not to punish the parent. In re K.D., 962 N.E.2d at 1255. Father's girlfriend's drug use is illegal and causes impairment; Father's minimization of her drug use is, at best, a request for us to reweigh the evidence, which we will not do. At worst, it asks this court to legitimize that illegal drug use by ignoring it in determining the best interests of A.P. The trial court did not err when it concluded that girlfriend's presence in Father's home is

7

a risk to A.P.'s safety and well-being.  Under these facts and circumstances, the DCS proved by a preponderance of the evidence that A.P. is a CHINS as to Father.

Affirmed.

FRIEDLANDER, J., and PYLE, J., concur.