
FILED

Jul 31 2020, 8:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of: E.T. (Minor Child), *a Child in Need of Services*; A.T. (Father), *Appellant-Respondent,* <br><br> v. <br><br> The Indiana Department of Child Services, *Appellee-Petitioner.* | July 31, 2020 <br><br> Court of Appeals Case No. 20A-JC-312 <br><br> Appeal from the Vermillion Circuit Court <br><br> The Honorable Jill Wesch, Judge <br><br> Trial Court Cause No. 83C01-1902-JC-2 |

**Pyle, Judge.**

# Statement of the Case

A.T. ("Father") appeals the trial court's determination that his son, E.T. ("Child"), is a Child in Need of Services ("CHINS") based on a petition filed by the Department of Child Services ("DCS"). Father argues that trial court: (1) committed fundamental error when it held his factfinding and dispositional hearings outside the statutory timeframes; and (2) violated his due process rights when it determined that Child was a CHINS in a separate proceeding involving the Child's mother ("Mother") prior to giving him an opportunity to be heard.[1] Concluding that: (1) Father has failed to establish fundamental error regarding his statutory compliance argument; and (2) his due process rights were not violated, we affirm the CHINS determination.

We affirm.

## Issues

1. Whether the trial court committed fundamental error by conducting Father's factfinding and dispositional hearings outside of the statutory timeframes.

2. Whether the trial court violated Father's due process rights.

## Facts

---

[1] Mother is not a party to this appeal. Facts relating to Mother will be included where appropriate.

[3]     Mother and Father are the parents of Child, who was born in September 2018. On January 9, 2019, DCS received a report alleging that a domestic violence incident had occurred the previous day between Mother and Father (collectively "Parents") in front of Child. The following day, Family Case Manager Kilee Myers ("FCM Myers") visited Mother to investigate the allegations. FCM Myers observed that Mother had "a black eye, busted lip[,] and large bruises on her arms." (App. Vol. 2 at 18). Child was not immediately removed, rather DCS created a safety plan with Mother. Father, who was arrested as result of the incident, was charged with Level 6 felony domestic battery and Class B misdemeanor false informing.

[4]     On February 5, 2019, following the report and investigation of domestic violence between Parents, the trial court authorized DCS to file a petition alleging that Child was a CHINS. Specifically, DCS alleged that: (1) Child was a victim of neglect due to exposure to domestic violence; (2) Parents had significant alcohol abuse issues; and (3) Father remained incarcerated due to the domestic violence incident. Child was initially placed with Father's brother, but, after a few weeks, Father's brother requested that DCS remove Child from his home. Child was subsequently placed in a licensed foster home.

[5]     Following the initial hearing, DCS filed a motion to have separate factfinding hearings for each parent because "Mother ha[d] secured a restraining order against Father and [was] fearful of being around him." (App. Vol. 2 at 39). The trial court granted the motion and scheduled Father's factfinding hearing for March 26, 2019 and Mother's for April 2, 2019.

[6]     On March 25, 2019, Father's counsel filed a motion to continue the factfinding hearing. The motion stated that Father "waive[d] the 60[-]day requirement for [factfinding] hearing." (Supp. App. at 2). The trial court granted the motion and rescheduled Father's factfinding hearing for April 30, 2019.

[7]     In early April 2019, as a result of the January incident, Father pled guilty to an added charge of Class B misdemeanor disorderly conduct in exchange for the State's dismissal of the original charges. Later that month, Father was arrested again and charged with committing Class A misdemeanor battery against Mother. Father pled guilty as charged.

[8]     Meanwhile, the trial court held Mother's April factfinding hearing. At the hearing, she admitted that Child was a CHINS. The trial court adjudicated Child a CHINS and held a dispositional hearing on April 23, 2019. Thereafter, the trial court issued a dispositional order regarding Mother.

[9]     On April 29, 2019, the day before Father's factfinding hearing, Father's counsel filed another motion to continue the factfinding hearing. This motion stated that Father "waive[d] the statutory time requirement for [factfinding] hearing." (Supp. App. at 5). The trial court granted the motion and rescheduled the factfinding hearing for June 25, 2019.

[10]    At the June 25 hearing, Father was not present, and his attorney, who had moved out of state without withdrawing from the case, also was not present. The trial court then appointed a new attorney for Father. In its order, the trial court stated that "to ensure [that counsel] has time to speak to his client, the

court hereby continues this hearing to August 6, 2019[.]" (App. Vol. 2 at 83).

Thereafter, the trial court, on its own motion, continued the August 6 hearing due to the unavailability of the judge and rescheduled the factfinding hearing for August 27, 2019. Father's counsel did not object. At the August 27 hearing, the trial court, by agreement of the parties, scheduled a status hearing for September 23, 2019. At the status hearing, the trial court scheduled Father's factfinding hearing for October 2019.

[11]  On October 2, 2019, the trial court held Father's factfinding hearing. Father did not object to the date of the factfinding hearing or allege that it was outside the statutory timeframe. At the outset of the hearing, DCS requested that the trial court take judicial notice of Mother's admission that Child was a CHINS. In response, Father's counsel stated that "mother's admission is not father's admission and just because a . . . child may be a CHINS as to mother does not mean that the child is a CHINS as to father as well." (Tr. Vol. 2 at 43-44). The trial court granted DCS' request and took judicial notice of Mother's admission.

[12]  During the hearing, Family Case Manager Megan Butler ("FCM Butler") testified that she had been the case manager for Child since February 2019. She explained that, in January 2019, DCS had received a report regarding domestic violence in front of Child and alcohol abuse by both parents. She further explained that after Father had been released from jail in February 2019, he had participated in services, which included home-based case management, supervised visits, and random drug screens. FCM Butler further explained that Father had engaged in services until he was arrested in April 2019, and that he

had failed to re-engage in services following his release from jail in July 2019. FCM Butler opined that it was not in Child's best interest to be in Father's care, explaining that:

> [t]here has been such a significant history with him and [Mother], the lack of [Father] acknowledging that he has been any part of the domestic violence with [Mother]. He takes no responsibility for it and blames [Mother] for it. [Father] has also told me in the past that he does have an alcohol problem himself and he had talked about completing services because of that but has not done so. [Father] isn't steadily employed at this moment so I – I would be concerned for [Child] to go back to [Father] right now.

(Tr. Vol. 2 at 73).

[13] Father also testified at the hearing. He admitted that he had been arrested in January 2019 due to the domestic violence incident with Mother and that he had pled guilty to Class B misdemeanor disorderly conduct. He also admitted that he had been arrested again in April 2019 for committing Class A misdemeanor battery against Mother and had pled guilty to the charged offense. Father also detailed his criminal history, which included previous convictions for battery and criminal confinement against Mother. However, Father maintained that he was not a violent person.

[14] On November 8, 2019, the trial court issued another order adjudicating Child to be a CHINS. Thereafter, following a request by DCS, the trial court set Father's dispositional hearing for January 27, 2020, which was the same date as a previously scheduled permanency hearing. Father did not object to the scheduled date of the dispositional hearing. During the January 2020 combined

hearing, Father did not object to the date of the hearing or allege that it was outside the statutory timeframe. At the hearing, DCS requested that Child's permanency plan as to both parents change to a termination of parental rights. However, the trial court ordered that the permanency plan change to termination as to Mother only. Following the dispositional hearing, the trial court issued a dispositional order that required Father to: (1) complete a domestic violence assessment and follow all recommendations; (2) complete Fatherhood Engagement; (3) participate in supervised visitations; (4) submit to random drug screens; and (5) not commit any acts of domestic violence. Father now appeals.

## Decision

Father raises two issues on appeal, arguing that the trial court: (1) committed fundamental error when it held his factfinding and disposition hearings outside the statutory timeframes; and (2) violated his due process rights by adjudicating Child a CHINS in a separate proceeding involving Mother without giving him an opportunity to be heard. We will address each argument in turn.

### 1. Factfinding and Dispositional Hearings

Father argues that the trial court committed fundamental error when it failed to complete his factfinding and dispositional hearings within the timeframes set forth by INDIANA CODE §§ 31-34-11-1 and 31-34-19-1. In response, DCS argues that the fundamental error doctrine is not applicable because Father received a fair hearing and has failed to show substantial harm.

[17]    Father's assertion requires that we examine the statutes setting forth the timeframes for holding factfinding and dispositional hearings.  INDIANA CODE § 31-34-11-1, which governs factfinding hearings, provides:

> (a) Except as provided in subsection (b), unless the allegations of a petition have been admitted, the juvenile court shall complete a factfinding hearing not more than sixty (60) days after a petition alleging that a child is a child in need of services is filed in accordance with IC 31-34-9.
>
> (b) The juvenile court may extend the time to complete a factfinding hearing, as described in subsection (a), for an additional sixty (60) days if all parties in the action consent to the additional time.
>
> * * *
>
> (d) If the factfinding hearing is not held within the time set forth in subsection (a) or (b), upon a motion with the court, the court shall dismiss the case without prejudice.

IND. CODE § 31-34-11-1.  INDIANA CODE § 31-34-19-1 governs dispositional hearings and provides, in relevant part:

> (a) The juvenile court shall complete a dispositional hearing not more than thirty (30) days after the date the court finds that a child is a child in need of services . . . .
>
> (b) If the dispositional hearing is not completed in the time set forth in subsection (a), upon a filing of a motion with the court, the court shall dismiss the case without prejudice.

IND. CODE § 31-34-19-1.

[18]    Matters of statutory interpretation present pure questions of law and are thus reviewed *de novo*.  *Matter of M.S.*, 140 N.E.3d 279, 282 (Ind. 2020).  We presume that the General Assembly intended for the statutory language to be applied in a

logical manner consistent with the statute's underlying policy and goals. *Id.* CHINS proceedings are civil in nature; they are also governed by significant procedural and substantive statutory provisions outlining their purposes and procedures. *Id.* at 284. However, all parties to a CHINS proceeding are subject to the Indiana Rules of Trial Procedure, and a trial court has discretion to enlarge the 120-day deadline if good cause is shown. *Id. See also* I.C. § 31-34-9-7.

[19] Here, the trial court held Father's factfinding and dispositional hearings outside of the statutory timeframes listed in INDIANA CODE §§ 31-34-11-1 and 31-34-19-1. However, both statutes provide a mechanism for an aggrieved party if a hearing is not held within the timeframes – a motion to dismiss. *See In re J.S.*, 133 N.E.3d 707, 713 (Ind. Ct. App. 2019) (explaining that although the CHINS statutory scheme provides mandatory deadlines and includes enforcement mechanisms, a party must preserve the right of expediency by filing a written motion to dismiss before the merits of a petition are litigated). Father did not file a motion with the trial court under either INDIANA CODE § 31-34-11-1(d) or INDIANA CODE § 31-34-19-1(b). Because Father failed to file motions to dismiss, his argument is waived. *See Matter of N.C.*, 83 N.E.3d 1265, 1267 (Ind. Ct. App. 2017) (holding that the father "waived his right to challenge the setting of the [parental termination] factfinding hearing date, although it fell outside the statutory 180 days[]"). *See also Plank v. Cmty. Hospitals of Ind., Inc.*, 981 N.E.2d 49, 53 (Ind. 2013) (explaining that "waiver" connotes an "intentional relinquishment or abandonment of a known right.").

[20] Father seeks to avoid waiver by asserting that the trial court's "failure[s] to adhere to any of the statutory deadlines" in this case "were so egregious [that] they amounted to fundamental error." (Father's Br. 8). We disagree. The fundamental error doctrine is extremely narrow and "'available only when the record reveals a clearly blatant violation of basic elementary principles, where the harm or potential for harm cannot be denied, and which violation is so prejudicial to the rights of the defendant as to make a fair trial impossible.'" *Matter of Eq.W*, 124 N.E.3d 1201, 1214-1215 (quoting *Jewell v. State*, 887 N.E.2d 939, 942 (Ind. 2008)). For an appellate court to overturn a trial court ruling based on fundamental error, "'the error [must have been] so egregious and abhorrent to fundamental due process that the trial judge should or should not have acted, irrespective of the parties' failure to object or otherwise preserve the error for appeal.'" *In re G.P.*, 4 N.E.3d 1158, 1167 n.8 (Ind. 2013) (quoting *Whiting v. State*, 969 N.E.2d 24, 34 (Ind. 2012)).

[21] Here, Father has failed to identify the harm that made a fair hearing impossible. As discussed more fully below, Father had both factfinding and dispositional hearings, during which he was represented by counsel, and was provided with a meaningful opportunity to contest the CHINS allegation. Furthermore, Father's argument that DCS would have the statutory authority to terminate his parental rights soon after his dispositional hearing is unpersuasive. As noted by Father, although DCS requested that Child's permanency plan as to both parents change to termination, the trial court ordered the plan changed to termination as to Mother only. This undercuts Father's argument that the

delays impeded his ability to bond with Child and provided him a small window to prove his parental fitness. Our review of the record reveals that at Father's dispositional hearing, the trial court scheduled a review hearing for April 2020, thereby giving Father time to bond with Child and prove his parental fitness. Therefore, under the facts of this case, we conclude that the trial court's failure to complete the factfinding and dispositional hearings within the statutory timeframes did not constitute fundamental error.

## 2. Due Process Rights

[22] Father next argues that his due process rights were violated because the trial court adjudicated Child a CHINS before Father's factfinding hearing had occurred. Father's argument requires that we address the nature and focus of a CHINS determination. A CHINS proceeding focuses on the best interest of the child, not the "guilt or innocence" of either parent. *In re N.E.*, 919 N.E.2d 102, 106 (Ind. 2010). Because a CHINS determination regards the status of the child, a separate analysis as to each parent is not required in the CHINS determination stage. *Id*. A CHINS adjudication in no way challenges the general competency of parents to continue relationships with their children. *Id*. at 105. A CHINS adjudication is a civil action. *Id*. Therefore, DCS must prove by a preponderance of the evidence that the child is a CHINS as defined by the juvenile code. *Id*.

[23] It is well settled that "[t]he Due Process Clause of the United States Constitution prohibits state action that deprives a person of life, liberty or

property without a fair proceeding." *Lawson v. Marion Cty. Office of Family & Children*, 835 N.E.2d 577, 579 (Ind. Ct. App. 2005). Due process is essentially "the opportunity to be heard at a meaningful time and in a meaningful manner." *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976). We recognize that, "although due process is not dependent on the underlying facts of the particular case, it is nevertheless 'flexible and calls for such procedural protections as the particular situation demands.'" *Lawson*, 835 N.E.2d at 580 (quoting *Thompson v. Clark Cty. Div. of Family & Children*, 791 N.E.2d 792, 795 (Ind. Ct. App. 2003), *trans. denied*). Furthermore, where, as here, "one parent wishes to admit and one parent wishes to deny [that] the child is in need of services, due process requires the juvenile court to conduct a fact-finding hearing." *In re T.N.*, 963 N.E.2d 467, 469 (Ind. 2012). "[D]uring a CHINS proceeding, a parent is entitled to (1) cross-examine witnesses, (2) obtain witnesses or tangible evidence by compulsory process, and (3) introduce evidence on his behalf." *In re V.C.*, 967 N.E.2d 50, 52-53 (Ind. Ct. App. 2012) (citing INDIANA CODE § 31-32-2-3(b)), *trans. denied*.

[24] Father asserts that "[t]he court failed to provide [him] with a meaningful opportunity to be heard[]" because the trial court had earlier determined that Child was a CHINS in a proceeding involving Mother. (Father's Br. 16). In so arguing, Father directs us to *In re S.A.*, 15 N.E.3d 602 (Ind. Ct. App. 2014), *aff'd on reh'g*, 27 N.E.3d 287 (Ind. Ct. App. 2015), *trans. denied*. In that case, DCS removed a child from the mother after a report of child neglect stemming from the mother's drug use. The child's father, who had been absent from the child's

life while serving in the U.S. Navy, was notified of the CHINS proceedings. Thereafter, the father requested counsel, denied the CHINS allegations, and sought to establish paternity. Prior to the establishment of paternity, the trial court adjudicated the child to be a CHINS. Following the establishment of paternity, the father requested a factfinding hearing, moved to Indiana, and had daily supervised visitation with the child. After the father's factfinding hearing, the trial court continued the CHINS adjudication.

The father appealed and this Court reversed the CHINS adjudication because DCS had failed to establish that the father was not likely to meet his child's needs absent coercive intervention of the court. However, the *S.A.* Court sua sponte addressed the due process concerns that the child had been adjudicated a CHINS as to the father before the father's factfinding hearing had occurred. This Court held that the trial court had incorrectly "determined the [c]hild's CHINS status based solely on [the] [m]other's admission[,]" "notwithstanding the fact that [the] [f]ather was involved in the case and had denied the allegations in the CHINS petition." *S.A.*, 15 N.E.3d at 609. This Court held that the trial court "deprived [the] [f]ather of a *meaningful* opportunity to be heard" when it adjudicated the child a CHINS prior to the father's factfinding hearing. *Id*. (Emphasis in original). The *S.A.* Court reasoned that although a separate analysis as to each parent is not required, "a separate analysis 'is sometimes necessary' if the allegations have been made against both parents, and where one parent wishes to admit that the child is a CHINS while the other denies it." *Id*. (quoting *In re K.D.*, 962 N.E.2d 1249, 1256 (Ind. 2012)).

[26] On rehearing, the *S.A.* Court clarified that "when the [CHINS] adjudication can involve both parents at the same time, it should involve both parents at the same time so there is one adjudication as to all facts pertaining to the entire mater." *In re S.A.*, 27 N.E.3d at 292. This Court further stated that:

> If multiple hearings are unavoidable, then the trial court should, if at all possible, refrain from adjudicating a child a CHINS until evidence has been heard from both parents. And if an adjudication is unavoidable before evidence has been heard from the second parent, then the trial court must give meaningful consideration to the evidence by the second parent in determining whether the child remains a CHINS.

*Id*. at 292-93.

[27] That facts of the present case are distinguishable from *S.A.* Here, the CHINS petition was based on a domestic violence incident between Father and Mother that had occurred in front of Child. As a result of Mother's protective order and fear of Father, DCS filed a motion for separate factfinding hearings, which the trial court granted. Thereafter, Mother admitted that Child was a CHINS, and the trial court held a dispositional hearing and ordered Mother to complete services. Thus, separate hearings were unavoidable because both parents could not be present at the same factfinding hearing.

[28] Moreover, unlike in *S.A.*, our review of the record reveals that, despite Mother's admission, the trial court in this case did not adjudicate Child to be a CHINS based solely on this admission, as suggested by Father. Father had his own factfinding hearing, wherein he was provided the opportunity to cross-examine FCM Butler and introduce evidence. *See V.C.*, 967 N.E.2d at 52-53. Indeed,

Father's factfinding hearing yielded a CHINS adjudication based on the evidence presented, which included Father's: criminal history of violence towards Mother and the resulting injuries she suffered; failure to reengage in services following incarceration for battery against Mother; failure to visit Child; and lack of employment. Thus, the trial court gave "meaningful consideration to the evidence provided" by Father. *S.A.*, 27 N.E.3d at 293.

[29] In sum, Father received the due process to which he was entitled. Father had the opportunity to be heard at a meaningful time and in a meaningful manner. *See Lawson*, 835 N.E.2d at 580. Because Father had the opportunity to be heard, the trial court did not violate Father's due process rights. Therefore, we affirm the trial court's judgment.

[30] Affirmed.

Bradford, C.J., and Baker, J., concur.